THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT ZAZZETTI, Defendant-Appellant.

First District (4th Division)   No. 77-497

Opinion filed March 8, 1979.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Robert Zazzetti (also known as Bob Duff), guilty of both aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4) and attempted murder. (Ill. Rev. Stat. 1975, ch. 38, par. 8—4.) The trial court entered judgment on the attempted murder conviction and sentenced the defendant to a term of 10 to 30 years imprisonment; no judgment was entered or sentence imposed for the aggravated battery conviction. On appeal, the defendant contends that the evidence was insufficient to prove, beyond a reasonable

doubt, that he participated in the commission of either offense and that the jury instructions on the elements of attempted murder were incorrect.

While the charges against the defendant were tried by the jury in this case, the same charges, against a second defendant, Don L. Wiley, were heard by the trial judge. At the close of the State's case, the judge found Wiley not guilty.

At trial, the complaining witness, Charles Krask, testified that about 1 a.m., July 2, 1975, he was shot in the stomach while standing at the back door of his house. Earlier, on the evening of July 1, 1975, Krask and a woman friend had several drinks at Verges Lounge in Chicago Heights, Illinois. While at Verges, Krask argued with the defendant, who he knew by the name of Bob Duff. The argument started, according to Krask, after he accidentally bumped the defendant. Krask and his friend left the bar, went to his home in South Chicago Heights, Illinois, and retired for the night.

Sometime near 1 a.m., the couple was awakened by a pounding noise. Krask got up, checked the living room and then went to the rear of his house. He entered the closed-in rear porch and flicked on the outside lights which illuminated the backyard. The yard without lights is very dark. Krask testified that he saw two men in the backyard, about 10 feet away from him, looking at him and approaching the house with metal objects in their hands. Krask watched them for about three or four seconds, saw flashes, heard a report and was struck by something which caused him to fall down the basement stairs. He lay in the basement in pain and bleeding from gunshot wounds for several minutes before going back up the stairs to the kitchen. His friend came into the kitchen and at Krask's request called the police. She testified at trial, corroborating Krask's description of the evening.

Officer Cull of the East Chicago Heights Police Department arrived a few minutes after the call and Krask told him that "Bob Duff" and another man shot him. Krask said he told Cull that "Don L.," later identified as Don L. Wiley, was the second man. Krask testified that he knew both the defendant and Don L. Wiley for several years. In court he identified both men as the assailants.

Cull testified that although Krask told him immediately after the shooting that the defendant was the attacker, at that time Krask said he did not know the identity of the second man. Cull also stated that when he approached the house the night of the shooting he did not recall that the backyard lights were on. He said he retrieved several spent gun shells from Krask's back porch.

The defendant was arrested at 1:30 a.m. that same morning near the Vagabond Lounge in Chicago Heights, Illinois, in a car driven by Don L. Wiley. The owner of the car, Toni Barrett, was a passenger. Wiley and

Barrett were not arrested that morning with the defendant. A spent shell was found in the car. A ballistics expert testified at trial that the shell found in the car was fired from the same gun as the shells found at Krask's house.

For the defense, Toni Barrett, Barrett's friend Jacqueline Munro, and Barrett's brother James Watkins testified that the defendant was at the Vagabond Lounge from midnight to 1:30 a.m., on the night of the shooting. The defendant did not testify.

At the close of the case, the court instructed the jury on the elements of attempted murder. Over the defendant's objections one of those elements, murder, was defined as the killing of an individual with the intent "to kill or do great bodily harm."

The first issue in the case is whether the evidence presented to the jury proved beyond a reasonable doubt that the defendant was one of the men who shot Krask on July 2, 1975. The defendant contends that the testimony of Krask provides the sole evidence to support his conviction and that it was severely weakened on several points. He notes that Officer Cull's testimony conflicts with Krask's concerning the lighting in the backyard. That area was very dark and if the lights were out, as Cull testified, it would be virtually impossible to see the faces of anyone 10 feet from the back door of the house. Even if the lights were on, Krask admits he had only three or four seconds in which to view his assailants. The defendant argues that this minimal amount of time coupled with the poor lighting and the possibility that Krask was inebriated, casts doubt on Krask's perceptive abilities and damages his positive identification of the defendant. The identification is further impaired, according to the defendant, by the inconsistency between Krask's and Cull's version of Krask's statements after the shooting concerning the second attacker. Finally, the defendant notes that balanced against all these contradictions are his three unimpeached alibi witnesses, who, in placing him at the Vagabond Lounge at the time of the shooting, clearly established a reasonable doubt as to whether he was Krask's assailant.

The defendant cites *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434, and *People v. Jefferson* (1962), 24 Ill. 2d 398, 182 N.E.2d 1, as support for these arguments. In both of those cases the supreme court reversed convictions because the circumstances under which the identification of the defendants took place made eyewitness testimony unreliable. In *Jefferson* the complaining witness himself was unable to identify the defendant as the offender, even though he had been able to see the offender during the crime; further, the identification procedures used when two other eyewitnesses picked out the defendant at a police station were found improper. In *McGee* the court found that uncertain lighting conditions and the distances from which the eyewitnesses viewed

the offender prevented them from having an adequate opportunity to identify the person who committed the offense. In both cases, the defendants presented unimpeached alibis which put them some distances from the areas in which the crimes were committed.

■■ We find the instant case dissimilar to *McGee* and *Jefferson*. Most importantly, in this case Krask was acquainted with the defendant prior to the incident and was able to immediately identify him to the police as his attacker. In both *McGee* and *Jefferson* the evidence implies that the eyewitnesses had never seen either of the offenders before the crimes were committed. Further, although there is evidence contradicting it, Krask's testimony was that there was sufficient lighting in the backyard to enable him to see the defendant for "three or four seconds." Since this case does not involve a witness' perception of features never seen before, but a witness' recognition of someone known to him, that short time period is adequate for Krask's identification of the defendant.

Ideal conditions for identification are not always possible; the totality of the circumstances in each case must determine whether there was sufficient opportunity to make proper identification. (*People v. Bey* (1972), 51 Ill. 2d 262, 281 N.E.2d 638.) In this case, the totality of the circumstances indicate that time was sufficient for identification. In addition, the testimony of the ballistics expert, that the shell found in the car when the defendant was arrested was fired from the same gun as the shells found at Krask's house, is corroboration of the defendant's presence at the scene of the crime.

■■ The defendant also attacks Krask's credibility, suggesting that since the trial judge disbelieved Krask's identificiation of Wiley as the second assailant, Krask's identification of him also must be disbelieved. However, there are significant differences between Krask's identification of the defendant, which all evidence shows was immediate and upon which his conviction rests, and Krask's identification of Wiley, which some evidence shows came sometime after the shooting. Moreover, the finding by the jury that Krask identified the defendant and the finding by the judge that the identification of Wiley was not strong enough to support a conviction are not mutually exclusive. The jury was free to evaluate Krask's identification of the defendant in light of his weaker accusation of Wiley. The credibility of witnesses and the weight to give their testimony is a determination for the trier of fact. *People v. McDonald* (1975), 62 Ill. 2d 488, 343 N.E.2d 489.

■■ Finally, the number of the defendant's alibi witnesses alone does not outweigh Krask's testimony. A trial is not a quantitative balance where a count of witnesses on each side is taken and weighed to determine the truth. The credible testimony of a single eyewitness is sufficient to support a conviction even when evidence presented by the defendant contradicts

it. (*People v. Jones* (1975), 60 Ill. 2d 300, 325 N.E.2d 601; *People v. Malone* (1976), 37 Ill. App. 3d 185, 345 N.E.2d 801.) In this case the jury did not have to disbelieve Krask and heard enough evidence from him, which if believed, proved that the defendant was one of the assailants, beyond a reasonable doubt. The testimony of the alibi witnesses was not such that, by law, it outweighed Krask's.

The second issue in the case concerns the propriety of the jury instruction defining the elements of attempted murder. The contested instruction defined murder as an act performed with the intent " 'to kill or do great bodily harm.' " In *People v. Harris* (1978), 72 Ill. 2d 16, 27, 377 N.E.2d 28, that instruction was held erroneous in that it permitted the jury to find a defendant guilty if he acted only with intent to do great bodily harm rather than with intent to cause death. The State contends that the holding in *Harris* only should apply prospectively, not retroactively, and since this case was tried before the decision in *Harris* was issued, the defendant's conviction for attempted murder should not be reversed.

■■ In *People v. Antrim* (1979), 67 Ill. App. 3d 1, 385 N.E.2d 5, the court dealt explicitly with the question of the retroactive application of *Harris*. It noted that except for a brief period, the prevailing law in Illinois was that as articulated in *Harris* and held that under such circumstances *Harris* should be given retroactive effect. We agree with that reasoning and, therefore, must reverse the defendant's conviction for attempted murder. The cause is remanded to the circuit court for a new trial on that charge.

■■ The trial court only sentenced the defendant for the attempted murder conviction; the defendant was not sentenced for the "merged" conviction of aggravated battery, since both charges were predicated on the same physical acts. Because there was sufficient evidence to prove that the defendant was Krask's assailant, upon remand, should there be no new trial for attempted murder or in the event that the new trial does not result in a conviction for attempted murder, judgment should be entered on the defendant's aggravated battery conviction and he should be sentenced for it. *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part, and this cause is remanded for disposition consistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

JOHNSON and LINN, JJ., concur.