# Illinois Official Reports

## Appellate Court

---

### *People v. Lucious*, 2016 IL App (1st) 141127

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH LUCIOUS, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-1127 |
| Filed | September 8, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-8824; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Carolyn R. Klarquist, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Peter Maltese, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Keith Lucious, along with codefendant Anthony Scott, were charged with armed robbery, aggravated robbery, and aggravated unlawful restraint for accosting a woman in an alley and taking two backpacks from her. The aggravated robbery charge alleged that defendant and codefendant "indicat[ed] verbally, or by their actions," that they were armed. See 720 ILCS 5/18-1(b) (West 2012) (person commits aggravated robbery when he or she commits a robbery "while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon"). Defendant was 15 years old at the time of the offense, and codefendant was 16.

¶ 2    Defendant and codefendant were tried at a joint bench trial and convicted of aggravated robbery and unlawful restraint. At trial, the State introduced evidence that both defendant and codefendant had confessed to the offense. But only codefendant admitted that, during the robbery, he told the victim, "Don't make him [(*i.e.*, defendant)] shoot you." In its findings, the trial court cited codefendant's statement as evidence supporting the aggravated robbery charge.

¶ 3    In this appeal, defendant alleges that his trial attorney was ineffective for failing to object to the introduction of codefendant's inculpatory statement. We agree. Codefendant's statement was inadmissible as evidence of defendant's guilt, but the trial court expressly considered it as such. And that evidence prejudiced defendant with respect to his aggravated robbery conviction, as it offered direct proof of an essential element of the offense. We vacate defendant's conviction and remand for a new trial.

¶ 4                                  I. BACKGROUND

¶ 5    The State charged defendant with armed robbery predicated on his being armed with a firearm during the robbery, aggravated robbery, and aggravated unlawful restraint. The aggravated robbery charge alleged that, on April 5, 2013, defendant and codefendant committed a robbery "while indicating verbally, or by their actions *** that they were presently armed with a firearm or other dangerous weapon."

¶ 6    At the time of defendant's trial, armed robbery committed with a firearm by an offender who was at least 15 years old was an offense requiring defendant's case to be transferred to adult court without a hearing. 705 ILCS 405/5-130(1)(a) (West 2012).

¶ 7    Both defendant and codefendant elected to have bench trials. Neither defendant's counsel nor codefendant's counsel moved to sever their trials before they began.

¶ 8    Naritza Castellanos, through a Spanish interpreter, testified that at 10:30 a.m. on April 5, 2013, she was distributing fliers in an alley near 4251 West Haddon Avenue in Chicago. Castellanos was carrying two backpacks with her. The backpacks contained fliers, keys, a cell phone, and $20 in cash.

¶ 9    She testified that two young men, whom she identified as defendant and codefendant, approached her and asked her for money. She said she did not have any, and defendant hit her in her face and stomach. Defendant and codefendant threw Castellanos to the ground, took her backpacks, and fled. Castellanos also testified that defendant pressed a gun to her right temple while she was on the ground.

¶ 10    Castellanos testified that codefendant had red hair and that defendant wore "like braids or bows" in his hair. Castellanos said that defendant wore a black and brown checkered jacket, and codefendant wore a black jacket.

¶ 11    Shortly after defendant and codefendant fled, a passerby loaned his cell phone to Castellanos so that she could call the police. She testified that, a few minutes after she called the police, she saw codefendant again in the same area, but he had changed into a white jacket with red lettering on the back. Some time later, the police brought defendant and codefendant to Castellanos in a squad car, and Castellanos identified them as the boys who had robbed her.

¶ 12    Officer Michna testified that he and his partner responded to a call of a robbery near Thomas Street and Kildare Avenue. The prosecutor asked Michna if he was given "a description of any sort regarding the robbery," and Michna replied, "Just it was armed robbery and two male black teens." The court interjected, "I think she means the description of the individuals involved," and Michna said, "Two male black teens."

¶ 13    Michna saw two black teenagers in the area, whom he identified as defendant and codefendant, and approached them in his car. Michna said that one of them "had braids and the other one had orangish-red hair." Michna asked where they were coming from, and defendant and codefendant "gave conflicting stories." Michna testified that he and his partner put defendant and codefendant into their squad car and drove them back to Castellanos's location to conduct a showup. Castellanos identified defendant and codefendant as the robbers.

¶ 14    After Castellanos identified defendant and codefendant, they were placed under arrest and searched. The police recovered a set of keys from codefendant, which Castellanos identified as her keys. Defendant and codefendant did not have a cell phone or any money on them. Michna testified that no firearm was recovered in connection with the robbery.

¶ 15    On cross-examination, codefendant's counsel asked Michna if he stopped defendant and codefendant simply because of their proximity to the site of the robbery, and Michna replied, "No, based on the red hair. They were male teens, black teens." He also testified that he saw them less than two blocks from the reported site of the robbery.

¶ 16    Detective Suzanne Chevalier testified that she and an assistant State's Attorney questioned defendant about the robbery while defendant's father was present. Defendant said that he and codefendant skipped school that day to go shoe shopping. They saw Castellanos in an alley and "decided that they wanted to take her backpacks."

¶ 17    Chevalier testified that defendant admitted that he and codefendant approached Castellanos, threw her to the ground, and took her backpacks. Defendant said that Castellanos's face hit the ground when they threw her down. He also said that "he had a cell phone" during the robbery.

¶ 18    Chevalier testified that codefendant gave a statement that described the robbery in the same way as defendant's. But codefendant added that "he told the victim, don't make him shoot you." Codefendant also said that he did not know why he said, "don't make him shoot you," because defendant "only had a cell phone with him." Codefendant said that he found keys in one of the backpacks and that, after the robbery, he and defendant walked around the neighborhood looking for Castellanos's car "so that they could take it."

¶ 19    After Detective Chevalier testified, the State rested. Defendant moved for a directed finding on the armed robbery count, which the court granted.

¶ 20    Neither defendant nor codefendant elected to testify or present any evidence.

¶ 21    Defendant's counsel argued that "the evidence showed at best it was a Class 2 robbery," not an aggravated robbery. The State responded by noting that Castellanos had testified that defendant put a gun against her head and that defendant had admitted to having a cell phone during the robbery. Thus, the State argued, defendant "probably put his cell phone against her head." The State also cited codefendant's statement that he said, "[D]on't make him shoot you," and that defendant had a cell phone, arguing, "Well, obviously, they were portraying to this woman that they had a weapon. Why else would [codefendant] say that, and why else would [defendant] say to the police officers, I didn't have a gun, it was just a cell phone?"

¶ 22    The trial court made the following findings:

    "I will today find each defendant guilty of the offense of aggravated robbery. That finding is predicated on the fact that within the statements, I think there's an indication by both of them on some level that they perpetrated a fraud, if you will, and that they were attempting to allude to a gun that they're now asserting really didn't exist in one circumstance, quoting the victim, by pressing something against her body that was hard and led her to the conclusion that it might have been a weapon, and within the words of the defendant for which they are both accountable, I also hear that same effort to give her the impression that they were armed.

    And for that reason, there will be a finding of guilty as to—and I want to indicate that my notes relative to the victim in this case indicate—and I certainly have a very strong recollection of her, that she was a very strong witness, offered a factually rich explanation of the facts in this case, and a working person, a really strong recall, and I found her highly credible.

    And for that reason, I'll be finding each defendant guilty of the offense of aggravated robbery and unlawful restraint."

¶ 23    Defense counsel filed a motion for a new trial, which made no mention of the admission of codefendant's statement. The trial court denied the motion.

¶ 24    Because defendant had been acquitted of the offense that led to his being tried in adult court (*i.e.*, armed robbery with a firearm), the State moved to have defendant sentenced as an adult, noting that he had three previous adjudications of delinquency for burglary, aggravated unlawful use of a weapon, and possession of a stolen motor vehicle. See 705 ILCS 405/5-130(1)(c)(ii) (West 2012) (permitting State to move for adult sentencing when juvenile charged with automatic-transfer offense is acquitted of automatic-transfer offense and convicted of another, nonautomatic-transfer offense). Defense counsel noted that, while defendant was in custody, he got good grades. The court granted the State's motion, citing defendant's criminal history and the fact that this offense involved violence.

¶ 25    The court sentenced defendant to five years' incarceration for aggravated robbery. Defendant's mittimus reflects a three-year sentence for "aggravated unlawful restraint." Defendant appeals.

¶ 26                                II. ANALYSIS
¶ 27              A. Ineffective Assistance of Counsel/Codefendant's Statement
¶ 28    Defendant's first argument on appeal is that his trial attorney was ineffective for failing to object to the State's admission of codefendant's statement to the police, specifically the portion of codefendant's statement in which he admitted that he told Castellanos, "[D]on't

make him shoot you." Defendant contends that the admission of that statement violated his right to confront the witnesses against him, as codefendant invoked his right to silence. And, defendant contends, the trial court improperly relied on codefendant's statement as evidence that defendant had committed aggravated robbery.

¶ 29    To establish a claim of ineffective assistance of trial counsel, defendant must show that his attorney's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To show that his attorney's performance was deficient, a defendant must establish that his attorney's performance was objectively unreasonable under prevailing professional norms. *Id.* at 688. A defendant shows prejudice where a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We first address counsel's performance, then turn to the prejudice prong.

¶ 30                                    1. Deficient Performance

¶ 31    We must view counsel's performance "from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). And, with respect to counsel's strategic choices, we must "be highly deferential to trial counsel." *Id.* But we will still find counsel's performance to be deficient where a strategic decision "appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *People v. King*, 316 Ill. App. 3d 901, 916 (2000).

¶ 32    Generally, " 'what matters to object to and when to object' are matters of trial strategy." *Perry*, 224 Ill. 2d at 344 (quoting *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997)). But an attorney is expected to use " 'established rules of evidence and procedure to avoid, when possible[,] the admission of incriminating statements, harmful opinions, and prejudicial facts.' " *King*, 316 Ill. App. 3d at 916 (quoting *People v. Moore*, 279 Ill. App. 3d 152, 159 (1996)).

¶ 33    Necessarily, counsel cannot be deemed ineffective for failing to raise an objection to admissible evidence—such an objection would be futile. See, *e.g.*, *People v. Shatner*, 174 Ill. 2d 133, 159 (1996). Thus, in order to determine whether counsel's performance was deficient, we first discuss the admissibility of codefendant's statement.

¶ 34    In *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), the United States Supreme Court held that the admission of a codefendant's statement inculpating defendant during a joint jury trial violates the confrontation clause of the sixth amendment. See also U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***."). Subsequently, in *Lee v. Illinois*, 476 U.S. 530, 543 (1986), the Court held that the confrontation clause is violated when the trial court presiding over a joint bench trial "expressly *** relie[s]" on a codefendant's confession as evidence of the defendant's guilt. And long before the federal constitutional principle was established, under both the Illinois Constitution and its "inherent authority *** to announce the law of evidence for the assurance of fair trials," the Illinois Supreme Court has condemned the admission of extrajudicial statements of codefendants against a defendant. *People v. Duncan*, 124 Ill. 2d 400, 411-15 (1988).

¶ 35    In this case, the State charged defendant with aggravated robbery, an offense that required proof that defendant, either verbally or by his actions, conveyed to Castellanos that he was

- 5 -

armed with a firearm or other dangerous weapon. 720 ILCS 5/18-1(b) (West 2012). Codefendant's statement, "[D]on't make him shoot you," was direct evidence establishing that codefendant conveyed to Castellanos that defendant was armed. And the trial court considered this evidence in finding defendant guilty, stating, "[W]ithin the words of the defendant for which they are both accountable, I also hear that same effort to give her the impression that they were armed." The trial court erred in relying on codefendant's statement to find that the State proved an essential element of its case against defendant.

¶ 36     We acknowledge that, at a joint bench trial, a trial judge is expected to be able to consider the evidence introduced against each defendant separately. See *People v. Todd*, 154 Ill. 2d 57, 69 (1992) ("At a bench trial, the trial judge is presumed to consider only proper evidence."). And counsel would not be unreasonable in relying on that presumption. Thus, it is possible that counsel's failure to object to the admission of codefendant's statement at the time it was introduced would be excusable—counsel could reasonably assume that the trial court would consider the statement only as to codefendant's case.

¶ 37     But here, the record shows that the trial court did not consider codefendant's statement solely as to codefendant's guilt. To the contrary, the trial court's findings demonstrate that it expressly considered codefendant's statement as evidence of defendant's guilt, as the court said that defendant was "accountable" for codefendant's statement. Once that occurred, counsel had a duty to object to the trial court's improper consideration of codefendant's statement. But counsel made no such objection. Counsel did not even argue that the trial court erred in considering codefendant's statement in his motion for new trial. We further might have expected that defense counsel would have at least reminded the trial court of its obligation not to consider codefendant's statement during his closing argument, but defense counsel did nothing of the kind; his entire closing argument consisted of saying, "Judge, we believe that the evidence showed that at best it was a Class 2 robbery."

¶ 38     The State claims that there is "absolutely nothing" in the record to support the notion that the trial court considered codefendant's statement against defendant. The State notes that, after discussing codefendant's statement, the court discussed Castellanos's credibility and then said, "And for *that reason*, I'll be finding each defendant guilty of the offense of aggravated robbery and unlawful restraint." (Emphasis added.) The State claims that the words, "for that reason," show that the trial court found "defendant guilty based on the highly credible testimony of the victim" rather than codefendant's statement.

¶ 39     We reject the State's argument because it wholly ignores the entirety of the trial court's findings. The first thing the trial court said was, "I will today find each defendant guilty of the offense of aggravated robbery." The very next thing the trial court said was, "*That finding is predicated* on the fact that within *the statements*, *** they were attempting to *allude to a gun* that they're now asserting really didn't exist ***." (Emphases added.) Thus, the trial court expressly predicated its finding of guilt at least in part on codefendant's allusion to a gun.

¶ 40     Moreover, the trial court expressly cited codefendant's statement as evidence that codefendant and defendant made an "effort to give her the impression that they were armed." And the trial court did not limit codefendant's statement to a discussion of codefendant's guilt. To the contrary, the court expressly said that defendant was "accountable" for codefendant's statement.

¶ 41     And after discussing codefendant's statement, the court said, "And for that reason, there will be a finding of guilty as to—," before stopping and commenting on the strong credibility

- 6 -

of the complaining witness. When the court was finished with that commentary, it then proceeded to conclude that, "for that reason," it was finding each defendant guilty. We cannot accept the State's attempt to limit the "reason" for the trial court's ruling to only the credibility of the complaining witness and nothing else.

¶ 42     Finally, we reject the notion that counsel's failure to object to codefendant's statement was the product of any reasonable strategy. Codefendant's statement directly proved an essential element of aggravated robbery. No reasonable attorney in defense counsel's shoes would have failed to recognize that. And objecting to the evidence would have directly aligned with counsel's chosen strategy: seeking a conviction for the lesser offense of simple robbery. Had defense counsel been able to raise a reasonable doubt as to whether defendant communicated the fact that he was armed to Castellanos, defendant would have simply been guilty of robbery. See 720 ILCS 5/18-1(a) (West 2012). Permitting the trial court to consider codefendant's statement against defendant ran directly counter to defense counsel's chosen strategy.

¶ 43     Having found that counsel performed deficiently, we now turn to the question of whether defendant was prejudiced by counsel's deficient performance.

¶ 44                                              2. Prejudice

¶ 45     As we stated above, a defendant shows prejudice where there was a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Defendant need not "prove by a preponderance of the evidence that the outcome would have been different," and "prejudice may be found even when the chance that minimally competent counsel would have won an acquittal is 'significantly less than 50 percent,' as long as a verdict of not guilty would be reasonable." *People v. McCarter*, 385 Ill. App. 3d 919, 935 (2008) (quoting *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001)).

¶ 46     As we explained above, the trial court's improper consideration of codefendant's statement established an essential element of the aggravated robbery charge. Had counsel objected to that evidence, he would have significantly undermined the State's proof of aggravated robbery and created a reasonable probability that defendant would have been acquitted of that charge. Thus, counsel's failure to object prejudiced defendant.

¶ 47     The State argues that defendant has not shown prejudice because there was other evidence supporting the aggravated robbery charge, namely the evidence that defendant pressed an object (according to the State, his cell phone) against Castellanos's temple. There are two problems with the State's argument.

¶ 48     First, the evidence that defendant pressed his cell phone against Castellanos's temple was far less persuasive than the evidence that codefendant told Castellanos, "[D]on't make him shoot you." Codefendant's statement was direct evidence proving an essential element of the charge of aggravated robbery. By contrast, in his statement to the police, defendant did not admit to pressing his cell phone to Castellanos's head. Instead, he simply said that he had a cell phone in his possession. And Castellanos did not testify that defendant pressed a cell phone to her head. She said that defendant put a gun to her head, but the trial court granted defendant a direct finding on the armed robbery charge, effectively concluding that neither defendant had a gun. The State *drew the inference* that defendant pressed his phone against Castellanos's head in its closing argument, combining Castellanos's testimony with defendant's statement to the

police. While that was a reasonable inference for the State to draw in its summation, the direct evidence of a threat in codefendant's statement was far stronger than the inference that defendant put his cell phone against Castellanos's head in an attempt to trick her into believing he had a gun.

¶ 49    Second, as we stated above, when evaluating the prejudice caused by counsel's failure to object to the trial court's reliance on codefendant's statement, the inquiry is not simply whether there was other evidence sufficient to support a defendant's conviction. Rather, we must ask whether there was a reasonable probability that, if counsel had objected to codefendant's statement, the outcome of the trial may have been different. Here, where the trial court expressly relied on codefendant's statement in finding defendant guilty, we believe there is a reasonable probability that the outcome of defendant's trial would have been different had the trial court not considered codefendant's statement.

¶ 50    The State also claims that, in its findings, the trial court "did not specified [*sic*] to which defendant it was referring" when it found that each defendant was "accountable" for the statement. But the court said that "the words of the defendant" showed an "effort to give [Castellanos] the impression that they were armed." In his statement to the police, defendant did not say that he or codefendant said anything that would give Castellanos the impression that they were armed. Only codefendant's statement to the police, in which he admitted saying, "[D]on't make him shoot you," could possibly be construed as including a suggestion that they were armed. Thus, it is clear that the trial court was referring to codefendant's statement in its findings.

¶ 51    Finally, the State argues that codefendant's statement could not have factored into defendant's conviction because Castellanos did not speak English, and she could not have understood codefendant when he said, "[D]on't make him shoot you." But the aggravated robbery statute does not require that the victim *understands* the communication that the defendant is armed. Instead, it simply requires the State to prove that the defendant "indicat[ed] verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon." 720 ILCS 5/18-1(b) (West 2012). Codefendant's statement, whether understood by Castellanos or not, constituted evidence that defendant verbally indicated to Castellanos that he was armed.

¶ 52    The State cites *People v. Thorne*, 352 Ill. App. 3d 1062 (2004), in support of its argument that counsel was not ineffective. We find that case distinguishable. In *Thorne*, both the defendant and his codefendant gave statements implicating himself and the other, both of which statements were admitted at the joint bench trial. *Id.* at 1068-69. And though the trial court discussed the two statements together in announcing its ruling, the court "never affirmatively allowed [the codefendant's] statement into evidence against [the defendant]." *Id.* at 1079. Even more importantly, after discussing the two statements, the trial court said, " 'While the defendants are jointly on trial before the court each one of them is entitled to a separate and independent consideration of the evidence as it applies to him.' " *Id.* at 1078. Here, in contrast, there was only one statement, that of codefendant, and the trial court *expressly* relied on codefendant's statement in finding defendant guilty.

¶ 53    We hold that defendant was denied the effective assistance of counsel when his trial attorney failed to object to the admission of codefendant's statement. That statement was inadmissible as to defendant, was proved an essential element of the State's case, and was

expressly relied on by the trial court in finding defendant guilty of aggravated robbery. We vacate defendant's conviction for that offense and remand for a new trial.

¶ 54 We find no double-jeopardy bar to retrial on the aggravated robbery count, as the evidence of defendant's guilt at trial was sufficient for a rational trier of fact to find guilt beyond a reasonable doubt. See *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (double jeopardy did not preclude retrial following reversal due to erroneous admission of defendant's inculpatory statement, even if evidence was insufficient to convict after discounting that statement, because "for purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence"); *People v. McKown*, 236 Ill. 2d 278, 311 (2010) ("If the evidence presented at the first trial, including the improperly admitted evidence, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy" and does not violate double-jeopardy principles.).

¶ 55 B. The Unlawful Restraint Conviction

¶ 56 We are left with the question of how our finding of ineffective assistance affects defendant's conviction for unlawful restraint. Defendant does not contend that his attorney's failure to object to codefendant's statement in any way impacted his conviction for unlawful restraint. Instead, defendant argues that codefendant's statement provided "the necessary element to find [him] guilty *** of aggravated robbery, and without the statement, the evidence [was] only sufficient to convict [defendant] of robbery." Defendant's only discussion of the conviction for unlawful restraint is his contention that it should be vacated under the one-act, one-crime doctrine, because it was carved from the same act as his aggravated robbery conviction and is a lesser-included offense of aggravated robbery. For the following reasons, we conclude that a review of the unlawful-restraint conviction is not before us at this juncture.

¶ 57 We begin by agreeing with the parties that the unlawful-restraint conviction should have merged into the aggravated-robbery conviction under the one-act, one-crime doctrine. The one-act, one-crime rule applies " 'where more than one offense is carved from the same physical act' " and the lesser offense is a lesser-included offense of the greater offense. *People v. Artis*, 232 Ill. 2d 156, 161 (2009) (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). In such a scenario, the defendant "should be sentenced on the most serious offense and the less serious offense should be vacated." *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009).

¶ 58 The parties agree, as do we, that defendant's act of aggravated robbery necessarily included his restraint of Castellanos. His only act of restraint was hitting her and pushing her to the ground, which were the same acts of force supporting the aggravated robbery charge. See, *e.g.*, *People v. McWilliams*, 2015 IL App (1st) 130913, ¶¶ 19-22 (one-act, one-crime rule applied to convictions of armed robbery and unlawful restraint where defendants ordered victims to ground, pointed BB guns at them, and took items from them); *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 55 (one-act, one-crime rule applied to convictions of armed robbery and unlawful restraint where "defendant restrained [the victim] from the beginning until the end of the armed robbery—that is, from the moment he displayed a gun and

demanded money, until the moment he took [the victim's] wallet and placed a gun in his mouth").[1]

¶ 59    We now consider what happened in the trial court. While the trial court found defendant guilty of both aggravated robbery and unlawful restraint at the conclusion of the trial, the court only sentenced defendant on the aggravated-robbery count. The court's oral pronouncement of defendant's sentence contains no mention of the unlawful-restraint count at all. Instead, the court's oral pronouncement only reflects a sentence for the greater offense, which is precisely what should have occurred pursuant to the one-act, one-crime doctrine. *Samantha V.*, 234 Ill. 2d at 379.

¶ 60    But defendant's mittimus shows a conviction for "aggravated unlawful restraint" and a corresponding sentence of three years in prison. The State concedes that the mittimus should have read "unlawful restraint," but the bigger point is that, in light of the trial court's oral pronouncement of sentence only on the aggravated-robbery conviction, there should have been nothing at all on the mittimus with regard to the unlawful-restraint conviction. The unlawful-restraint conviction should have merged into the conviction for aggravated robbery, as we have just discussed, under the one-act, one-crime rule.

¶ 61    We find that the trial court did, in fact, merge the unlawful-restraint conviction into the conviction for aggravated robbery. Though the court never specifically said as much in its pronouncement of sentence, it only sentenced defendant on the greater offense of aggravated robbery. And given that both parties and this court all agree that merger was the appropriate action to take with regard to the unlawful-restraint conviction, there is every reason to believe that the trial court took the correct action here, even if it did not specifically say so.

¶ 62    The language in the mittimus does not upset our conclusion, as it is long-established that the court's oral pronouncement is the judgment of the court and controls over the mittimus. *People v. Carlisle*, 2015 IL App (1st) 131144, ¶ 87; *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993). In this case, because the court's oral pronouncement of defendant's sentence did not refer to the unlawful-restraint count and because the one-act, one-crime rule supports the trial court's entry of a sentence on the aggravated robbery count alone, we find that the trial court did not enter a sentence on the unlawful-restraint count. Instead, we find that the trial court properly, albeit implicitly, merged the unlawful restraint count into the aggravated robbery conviction.

¶ 63    As the trial court entered conviction only on aggravated robbery, the unlawful-restraint conviction is not before us. See *People v. Childress*, 321 Ill. App. 3d 13, 26 (2001) ("There is no final judgment in a criminal case until the imposition of a sentence, and, in the absence of a final judgment, an appeal cannot be entertained."). Accordingly, we express no opinion on whether counsel's ineffectiveness could have affected this count. If the day should ever come that defendant is sentenced on the unlawful-restraint conviction, that conviction will become a final judgment subject to appeal. See, *e.g.*, *People v. Zazzetti*, 69 Ill. App. 3d 588, 593 (1979).

---

[1]The State initially argued that the conviction for unlawful restraint should not be vacated under the one-act, one-crime doctrine but later filed a motion conceding the error and seeking leave to withdraw that argument. We have granted the State's motion and accept its concession that the conviction for unlawful restraint should have merged into the conviction for aggravated robbery.

¶ 64                                    C. Defendant's Remaining Claims

¶ 65          Because we have vacated defendant's conviction and remanded for a new trial, we will address his remaining contentions of error solely to the extent that they are likely to recur on retrial. See *People v. Bryant*, 113 Ill. 2d 497, 507 (1986) (where retrial ordered, it is appropriate to consider questions likely to recur on retrial).

¶ 66          Defendant contends that his attorney was ineffective for failing to file a motion to quash his arrest and suppress Castellanos's identification of him at the scene of the robbery. It would be inappropriate for us to consider this issue when, on retrial, defendant's counsel may choose to file a motion to suppress. Because counsel's failure to file a motion to suppress will not necessarily occur on retrial, we decline to address this issue.

¶ 67          Defendant also claims that we should correct his mittimus. But we have vacated his aggravated robbery conviction and remanded for a new trial and found that no conviction was entered on the unlawful restraint count. Thus, these issues concerning defendant's sentencing order are moot.

¶ 68          Finally, defendant challenges the constitutionality of the statute that automatically transferred him from juvenile court to the criminal court because he had been charged with armed robbery with a firearm. See 705 ILCS 405/5-130(1)(a) (West 2012) (requiring that all juveniles 15 years old and up be tried as adults when charged with armed robbery committed with a firearm). He also claims that an amendment to that statute that removed armed robbery as one of the offenses requiring automatic transfer to adult court should be applied to his case. See Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a) (West 2014)). But defendant was acquitted of armed robbery at his first trial. On retrial, the double jeopardy clause will bar his being retried for that offense. So there will be no issue regarding the appropriateness of his automatic transfer; defendant will not face any charge that could possibly subject him to automatic transfer. Thus, these issues will not recur on retrial.

¶ 69                                          III. CONCLUSION

¶ 70          For the reasons stated, we vacate defendant's conviction and remand for a new trial because defendant was denied the effective assistance of counsel.

¶ 71          Vacated and remanded.