2022 IL App (1st) 201173
No. 1-20-1173
Opinion filed July 25, 2022

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08 CR 3180(02) |
| MARTIN ROMAN, | ) ) ) | The Honorable James B. Linn, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury found Martin Roman guilty of first degree murder for his participation in the beating

death of Francisco Reyes. The trial court sentenced him to 32 years in prison. On direct appeal,

this court reversed his conviction and remanded for retrial because the trial court erroneously

allowed the State to introduce prejudicial gang evidence. See *People v. Roman*, 2013 IL App (1st)

110882. On remand, Roman pled guilty, and the trial court sentenced him to 24 years in prison.

Roman did not appeal.

¶ 2 Roman filed a *pro se* petition for postconviction relief, contending his remand counsel was ineffective for misstating the sentence he could face following a retrial. In addition, Roman claimed his remand counsel threatened to quit if Roman chose to go to trial instead of accepting a plea. The trial court dismissed his petition at the first stage. We find that the petition makes an arguable claim of ineffective assistance of counsel. Accordingly, we reverse the first-stage dismissal of Roman's postconviction petition and remand for second-stage proceedings consistent with the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)).

¶ 3 Background

¶ 4 The decision in Roman's direct appeal sets out the details of the offense and the case history. See *Roman*, 2013 IL App (1st) 110882. We reiterate the facts necessary to understand the claims in Roman's postconviction appeal.

¶ 5 In the early morning of December 24, 2007, a group of men beat and killed Francisco Reyes in the parking lot of a tortilla factory. The State charged Martin Roman and five other neighborhood men—Daniel Roman, Carlos Lopez, Ismael Morales, Omar Morales, and Adolfo Zuniga—with first degree murder and robbery. (All references to "Roman" refer to Martin Roman; we identify Daniel Roman by his first and last name.)

¶ 6 Roman and Zuniga were tried together after their codefendants' convictions. At trial, the State primarily relied on the testimony of three eyewitnesses—Sylvia Ortiz, Fernando Garcia, and Juliana Flores. They all saw the murder from the apartment building across the street. Ortiz and Garcia lived with their son on the second floor. They watched the crime from separate windows facing the parking lot. Flores was with her boyfriend, who lived downstairs from Ortiz and Garcia. She also watched the beating from a window.

¶ 7        Ortiz and Garcia heard a voice outside that they recognized as Daniel Roman's. Ortiz overheard Daniel Roman speaking on a cellphone and asking the person to come over and "help [him]" because someone was about to be beaten. Soon after, Roman, Lopez, Ismael Morales, and Omar Morales arrived. Garcia and Ortiz recognized them from their having been together in the neighborhood every day for four or five years. After the men gathered, they ran toward the factory parking lot where Reyes was operating a forklift. Juan Ramirez, one of Reyes' coworkers, testified that a supervisor sent Reyes to the parking lot to unload a shipment of corn. The men grabbed Reyes off the forklift seat, forced him to the ground, and hit and kicked him. After Reyes did not return, a supervisor sent Ramirez to check on him. Ramirez found Reyes lying in the parking lot and called 911.

¶ 8        Juliana Flores testified that she was staying at her boyfriend's apartment across the street from the factory, in the same building as Ortiz and Garcia. She heard a man talking outside at about 1:15 a.m. Looking out the window, Flores saw Daniel Roman on his cell phone and heard him speak about beating up someone. She then heard people running and looked out the window to see a group of men going toward the forklift operator. Flores looked away, and the next time she looked out the window, she saw the forklift operator on the ground and the men kicking and hitting him.

¶ 9        Ortiz testified that, earlier in the month, she heard a banging outside around 1 a.m. She looked out a window and saw three men hitting the factory door with baseball bats. Ortiz recognized the men as Roman, Daniel Roman, and Ismael Morales, as she frequently saw them around the neighborhood. When no one opened the factory door, Ortiz saw the men break car windows in the parking lot. She called the police.

¶ 10    A factory employee, Pedro Martinez, testified that he recognized the defendants from seeing them almost every day as he arrived and left work.

¶ 11    After the jury found Roman guilty of first degree murder, the trial court sentenced him to 32 years in prison.

¶ 12    On direct appeal, this court reversed Roman's conviction and remanded for retrial on the ground that gang evidence introduced by the State had no bearing on witnesses' identification of Roman or any issue. *Id.* ¶ 37. And, without physical evidence tying Roman to the crime, this court was unable to determine beyond a reasonable doubt that the gang-related evidence did not contribute to Roman's conviction. *Id.*

¶ 13    On remand, Roman pled guilty. Before pleading, the trial court admonished Roman he would be subject to a sentencing range of 20 to 60 years. After giving the remaining admonishments, the trial court accepted the parties' negotiated plea and sentenced Roman to 24 years in prison. Roman did not move to withdraw his plea or take another direct appeal from the plea proceedings.

¶ 14    In 2020, Roman filed a *pro se* petition for postconviction relief. He argued that his defense counsel on remand provided ineffective assistance by misrepresenting the potential sentence range he would face during a retrial, a misstatement repeated by the trial court judge. Roman also alleged that his counsel pressured him into pleading guilty and that, on the day of the trial, counsel stated that he would withdraw if Roman chose to pursue a trial instead of a plea. Attached to corroborate the claims were a verification affidavit, a partial school record, and supporting elements from the trial record, including a section of the plea hearing transcript. The trial court dismissed the petition, finding it frivolous and patently without merit.

¶ 15                                    Analysis

¶ 16      Roman contends that the trial court erred in summarily dismissing his petition for postconviction relief at the first stage. He maintains that his petition made an arguable claim of ineffective representation by his remand counsel and that he attached enough corroborating material to advance to the second stage. The State responds that Roman had effective counsel and that his petition is insufficient as it lacks an evidentiary affidavit. We agree with Roman.

¶ 17      The Act provides a system through which criminal defendants can raise constitutional claims about their trial or sentencing that were not and could not have been raised on direct appeal. *People v. Allen*, 2015 IL 113135, ¶ 20. Proceedings under the Act advance through three stages. *Id.* ¶ 21. In the first stage, the trial court evaluates whether the petition is frivolous or patently without merit. *Id.* If the petition passes this low bar, the trial court dockets it for second stage proceedings. *Id.* At the second stage, counsel represents the petitioner, who must show that their petition makes a "substantial showing" of a constitutional violation. *Id.* Should the petition survive, it advances to an evidentiary hearing, the third stage, where the trial court receives evidence and determines whether the defendant deserves relief. *Id.* ¶ 22.

¶ 18      At the first stage, the petition must be verified by affidavit (725 ILCS 5/122-1(b) (West 2020)), and supported by evidentiary "affidavits, records, or other evidence" (*id.* § 122-2). If the supporting " 'affidavits, records, or other evidence' are unavailable, the petition must explain why." *People v. Collins*, 202 Ill. 2d 59, 65 (2002) (quoting 725 ILCS 5/122-2 (West 2000)). Failure to attach the necessary " 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." *Id.* at 66.

¶ 19    With these requirements in mind, we take all allegations in the petition as true unless rebutted by the record and construe them liberally in Roman's favor. *Allen*, 2015 IL 113135, ¶ 25. A petition at this stage can be dismissed only if it "has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). To warrant dismissal, Roman's claim needs to be built on " 'an indisputably meritless legal theory or a fanciful factual allegation.' " *Allen*, 2015 IL 113135, ¶ 25 (quoting *Hodges*, 234 Ill. 2d at 16). We review *de novo* the first stage dismissal of Roman's petition. *Hodges*, 234 Ill. 2d at 9.

¶ 20    Roman alleges that his remand counsel erroneously advised him that he could face a sentence nearly twice his original sentence following a retrial. Roman also alleges that his counsel threatened to quit if he went ahead with retrial, instead of accepting the negotiated plea.

¶ 21    We assess these claims using the two-pronged test evaluating deficiency and prejudice set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To pass this test at the first stage, Roman must show it is arguable that counsel's performance fell below an objective standard of reasonableness and arguable that counsel's substandard performance prejudiced him. *Hodges*, 234 Ill. 2d at 17. To show prejudice, Roman must have sufficiently alleged an arguably "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

¶ 22                            Absence of Evidentiary Affidavit

¶ 23    Before turning to the merits, we address a procedural issue. The State, citing *Collins*, argues that Roman submitted his petition without a required supporting affidavit, violating the Act. In *Collins*, the Illinois Supreme Court affirmed a first-stage dismissal of a postconviction petition not supported by " 'affidavits, records, or other evidence' and offered no explanation for the absence of such documentation." *Collins*, 202 Ill. 2d at 66. Roman did not attach his own

evidentiary affidavit, but the language of section 122-2 provides that a petition be accompanied by "affidavits, records, *or* other evidence supporting its allegations." (Emphasis added.) 725 ILCS 5/122-2 (West 2020). "The use of 'other evidence' in the phrase *** indicates the legislature contemplated a wide range of documentary evidence would satisfy the evidentiary requirements of the first stage." *Allen*, 2015 IL 113135, ¶ 36. We also can excuse the absence of an evidentiary affidavit where the record corroborates the petition's factual claims. *People v. Hanks*, 335 Ill. App. 3d 894, 899 (2002).

¶ 24    The heart of Roman's ineffective assistance claim involves counsel's erroneous advice that Roman was subject to the full sentencing range (20 to 60 years) for first degree murder after retrial. Roman attached excerpts from the record that included a section of the plea hearing transcript where the trial court also admonished him that he faced up to 60 years if found guilty after a retrial. This "other evidence" corroborates his claims enough to pass the low bar of first-stage review, where we find it highly unlikely counsel would have stayed silent if he had recently given Roman correct information about his resentencing risk. Moreover, to the extent the State would require a signed affidavit from the allegedly ineffective counsel, our supreme court has repeatedly rejected that requirement at the first stage. See *Collins*, 202 Ill. 2d at 67.

¶ 25                    Claim of Ineffectiveness of Remand Counsel

¶ 26    We now consider the merits. We find Roman has made an arguable showing that his counsel provided deficient performance. Roman claimed that his remand counsel's representation was objectively unreasonable because he misrepresented the sentence Roman could face after retrial. Counsel stated that he could be sentenced up to 60 years, 28 years longer than his original 32-year sentence. But, as the parties agree, Roman could not receive a new sentence longer than his original sentence, absent "conduct on the part of the defendant occurring after the original

sentencing." 730 ILCS 5/5-5-4(a) (West 2020). At this stage, nothing in the record demonstrates Roman has committed wrongdoing deserving a harsher sentence after a retrial. And nothing refutes Roman's claim that counsel's advice about his sentencing risk after retrial constituted error.

¶ 27 The State contends that remand counsel's actions were mistakes that did not fall below the standard of objectively unreasonable representation. We disagree.

¶ 28 Ineffective assistance of counsel includes "fail[ing] to understand the possible sentences and thus wrongly inform[ing] defendant as to the possible range of sentences." *People v. Blommaert*, 237 Ill. App. 3d 811, 817 (1992) (distinguishing from counsel who "merely incorrectly predict[s] that a certain sentence [will] be imposed"). When taken together and liberally construing the allegations in his favor, Roman has articulated an arguable claim that counsel provided deficient representation. We, therefore, need not decide whether counsel arguably engaged in, as Roman describes it, a "possible campaign of pressure." Counsel's legal error suffices at this stage.

¶ 29 Turning to *Strickland*'s second prong, Roman claims that his counsel's deficient performance prejudiced the outcome of his retrial proceedings, as he had a plausible defense. "To establish the prejudice prong of an ineffective assistance of counsel claim [in the context of plea proceedings], the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). An "allegation that the defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice." *Id.* Rather, "defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Id.* at 335-36.

¶ 30 In his brief, Roman argues we should apply the standard presented in *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017). The Illinois Supreme Court has recognized that "*Lee* rejected the acquittal or viable defense requirements for *** an ineffective assistance claim related to a defendant's understanding of the consequences of pleading guilty." *People v. Brown*, 2017 IL 121681, ¶ 35. Even so, under *Lee*, a defendant who has pled guilty must only "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Id.* ¶ 40.

¶ 31 We need not choose between *Lee* and *Hall*, as Roman has made an arguable claim of prejudice under *Hall*. Notably, the "plausible defense" required by *Hall* does not have to be an affirmative one. A defendant can show prejudice in the plea context using the relative weakness of the State's case based on facts already in the record. See *People v. Ramirez*, 402 Ill. App. 3d 638, 643-44 (2010) (focusing on whether "defendant would have had a greater likelihood of success at trial" absent excluded prejudicial evidence).

¶ 32 The State argues the evidence at trial was "overwhelming" to the point that "the outcome was almost a given." In support of its argument, the State cites the factual background of our opinion in Roman's direct appeal. See *Roman*, 2013 IL App (1st) 110882, ¶¶ 4-18. The State conspicuously ignores, however, our finding that the State's evidence against Roman was not overwhelming. See *id.* ¶ 37 (finding error in admitting gang evidence not harmless because State's case consistent exclusively of eyewitness testimony). We acknowledged the three eyewitnesses the State emphasizes; yet, we indicated the relatively low strength of their testimony compared to the gang evidence. *Id.* (describing conditions of observation, noting it was 1 a.m., and witnesses saw beating from across street). An attack on the viability of eyewitness testimony is as plausible a defense as any since Roman would not face the prejudicial impediment of excessive gang

evidence. The State's brief acknowledges counsel's prediction that Roman had a "50/50" chance at trial. At this stage, no more is necessary. *Cf. People v. Lucious*, 2016 IL App (1st) 141127, ¶ 45 ("prejudice may be found even when the chance that minimally competent counsel would have won an acquittal is significantly less than 50 percent" (internal quotation marks omitted)).

¶ 33    Consider, too, Roman's perspective. He thought he faced a choice between the State's 24-year offer and a 60-year maximum, a risk spanning 36 years of his life. But absent extraordinary circumstances not before us, he only had to choose between the State's 24-year offer and a 32-year maximum, a 6-year risk. We cannot ignore the "arguable advantage to [Roman] in withdrawing his guilty plea." See *People v. Hatter*, 2021 IL 125981, ¶ 38 (considering defendant's exposure to additional convictions and a longer sentence based on those new convictions). And there would be virtually *no* risk in testing the State's case again—the worst that could happen would be re-conviction and the 32-year sentence he was already serving. Roman stood to gain from a retrial without the gang evidence.

¶ 34    We pause briefly to mention the parties' protracted dispute about evidence that Garcia reached an agreement with the State for assistance with immigration matters in exchange for his favorable testimony. See *People v. Morales*, 2019 IL App (1st) 160225, ¶¶ 10-11 (describing evidence of that assistance); see also *id.* ¶¶ 31-38 (describing arguable favorability of that evidence to Morales and its arguable materiality to his guilt). We decline to address this argument. The evidence is unnecessary to our finding of arguable prejudice. (Our restraint in addressing this argument is not a comment on its merits should postconviction counsel appointed on remand consider it a viable argument to reassert.)

¶ 35    We emphatically reject the State's repeated attempts to subject Roman's claim to the higher burdens of second and third stage postconviction proceedings. For example, the State

attempts to cast doubt on the credibility of Roman's claim by suggesting it "makes much more sense that the 32-year sentence was the starting off negotiating number and remand counsel bargained from there to obtain a 24-year sentence." Later in the brief, the State continues its campaign against Roman's credibility by insinuating we should not believe his claim, since he never attempted to withdraw his plea or took a direct appeal and waited three years to file his petition. And the State claims that Roman "believed in the veracity of his decision to plead guilty," and he "never intended to go to trial" because "it seems as though his main concern was the amount of time he had to serve."

¶ 36    The State also attempts to present an alternative course it believes more reasonable than acquiescing in the face of remand counsel's alleged threat to withdraw, seeking "a continuance to obtain a new lawyer or even asking the circuit court that new counsel be appointed." The State goes further and argues Roman's allegations about remand counsel's threats to withdraw "strain[ ] credulity." Not done yet, the State dismisses Roman's concern about counsel's arguably erroneous advice by describing it as "information that he just did not want to hear." Though we have not relied on the letter to INS on Garcia's behalf, the State openly attempts to draw the opposite inference from Roman's claim by saying, "the letter was simply informing immigration authorities that Mr. Garcia had helped the prosecution by testifying."

¶ 37    We have seen before the State's attempts to subject first-stage postconviction petitions to the heightened burdens of later stage proceedings (see, *e.g.*, *People v. Hayes*, 2022 IL App (1st) 190881-B, ¶¶ 48-49), but this is an egregious example. The State's repeated attempts to reframe Roman's arguments, offer alternative courses of action, or suggest that Roman doesn't mean what he says are all variations on the same theme: Roman's claim is incredible. But we do not decide

that now; indeed, it would be improper to do so. See *id.* ¶ 49 (credibility determinations are not for the first stage).

¶ 38       The State demands a "more probing inquiry [from this court] than what is contemplated on first-stage review." *Allen*, 113135, ¶ 45. The record excerpts attached to Roman's petition show his claim is "capable of objective or independent corroboration," all that first-stage proceedings require. *Id.* ¶ 24. We not only take Roman's allegations as true, but also construe them liberally in his favor. *Id.* ¶ 25. The "strengths and weaknesses" of Roman's claim are "best tested in the second or third stages of postconviction review." *Id.* ¶ 45. Although the State accurately recited these principles at the beginning of its argument section, it then proceeded to rebuff them. We can appreciate zealous advocacy. Still, the State owes more than lip service to the low pleading bar for first stage postconviction petitions.

¶ 39       Reversed and remanded.

No. 1-20-1173

---

*People v. Roman*, 2022 IL App (1st) 201173

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 08-CR-3180(02); the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Tasha-Marie Kelly, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |

---