2022 IL App (1st) 173013
No. 1-17-3013
March 07, 2022

FIRST DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 02 CR 2663001 |
| v. | ) | |
| | ) | The Honorable |
| FRANK ROLAND, | ) | Maura Slattery-Boyle, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman concurred in the judgment and opinion.
Justice Coghlan dissented, with opinion.

**OPINION**

¶ 1     Petitioner Frank Roland appeals from the circuit court's denial of his postconviction petition at the second stage of proceedings pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The petition alleged trial counsel was ineffective for failing to investigate his mental health history in support of his defense. The petition also claimed that newly discovered evidence previously unavailable to the defense could have

corroborated Roland's trial testimony that he was trying to commit suicide when he fired a gun in the direction of police officers. The circuit court summarily dismissed the petition.

¶ 2   Roland appealed the circuit court's first stage dismissal. This court reversed and remanded for second stage proceedings. The circuit court again dismissed the ineffective assistance of counsel claim, finding that trial counsel's failure to pursue every form of documentation regarding Roland's mental health does not establish an ineffectiveness claim. Roland claims his postconviction petition makes a substantial showing that trial counsel was ineffective. We reverse the circuit court's second stage dismissal and remand for a third stage evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4   On September 18, 2002, Roland was arrested pursuant a shooting incident involving police officers. At trial, Roland testified that while he was in custody, he attempted to obtain help with his mental health for two or three days. He subsequently had an incident where he hung himself with his bedsheets and a hanging light fixture. Roland attempted to take his life before the hanging incident by cutting his own throat. On November 06, 2002, the circuit court ordered Forensic Clinical Services (FCS) to examine Roland regarding his fitness to stand trial and sanity at the time of the offense. FCS could not comply with the order because medical records were needed from Cermak Health Services, Tinley Park Mental Health Center (Tinley), and Mt. Sinai Hospital.

¶ 5   On February 04, 2003, Dr. Roni Seltzberg wrote a letter indicating she evaluated Roland on January 07, 2003, and determined Roland was fit to stand trial with medication. On the issue of Roland's sanity at the time of the commission of the offense, Dr. Seltzberg deferred

2

the matter due to unobtainable psychiatric/medical records. FCS reported that the evaluation could not be completed until Cermak Health Services provided medical records.

¶ 6    On May 19, 2003, Dr. Seltzberg reported she performed a sanity evaluation on Roland and determined he was legally sane at the time of the offense. Dr. Seltzberg noted Roland was experiencing symptoms of a depressive mood disorder that may have been exacerbated by alcohol consumption and ingestion of other illicit substances. *Id.*

¶ 7    On January 27, 2005, a bench trial was held, and Roland testified that on the day of the incident he was "drinking, smoking weed, [and] getting high." Roland felt "bad" about his mother passing away and "guilty" about the death of the mother of his children. He purchased a .25-caliber handgun to commit suicide but was unable to shoot himself. When a police car drove by, Roland decided to point the gun at the officers to get them to shoot at him. At approximately 11:00 p.m., Roland was speaking with Theresa on Hoyne Street, as an unmarked police vehicle approached Roland. An officer exited the vehicle and ordered Roland to freeze, but instead, Roland ran in the opposite direction and fired a shot in the air. Roland did not intend to hit any officer because that "would have defeated [his] whole plan." Roland fled to Theresa's home where he was subsequently arrested.

¶ 8    Officer Ronald Rewers testified that on September 18, 2002, he was on patrol with Officers Figueroa and Delto. Officer Rewers received a call about an African American man wearing a red bandana, a white T-shirt, and blue jeans threatening a small child with a gun. The officers spotted Roland who matched the description, near 2704 North Hoyne Avenue at 11 p.m. Officer Rewers exited the vehicle, identified himself, and asked Roland to place his hands up. Roland looked at the officers and began running west. As Roland was running, he removed a

small handgun from his waist, and Officer Rewers instructed Roland to drop the weapon. While running, Roland "pointed the gun back towards [Rewers] and fired one shot." Rewers saw the muzzle flash, dropped to the ground, and returned fire. Roland was later arrested at 2634 North Hoyne Avenue. A .25-caliber handgun was found.

¶ 9    Following a bench trial, the circuit court found Roland guilty of attempted murder and sentenced him to a prison term of 30 years. On appeal, Roland argued that the trial judge erred in the finding of guilt by basing the decision on personal knowledge of handguns and misstatement of his testimony. This court affirmed Roland's conviction in *People v. Roland*, No. 1-05-1842 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10    On January 23, 2008, Roland filed a *pro se* postconviction petition, alleging his trial counsel was ineffective and that his fourth and sixth amendment rights were violated. Specifically, Roland claimed that counsel failed to investigate "claims of being hospitalized for psychiatric treatment to be able to present a proper defense at trial." In his petition, Roland stated that he was admitted to Tinley and was on four different kinds of medication from September 2002 to June 2005. The State moved to dismiss the postconviction petition and the trial court summarily dismissed the petition in a written order. The court found that Roland's claims were barred by the doctrine of waiver and his claims were frivolous and patently without merit.

¶ 11    Roland appealed the circuit court's dismissal. This court reversed that judgment and remanded for second stage proceedings in *People v. Roland*, No. 1-08-1580 (2010) (unpublished order under Illinois Supreme Court Rule 23). On remand, Roland's counsel submitted a supplemental postconviction petition alleging that trial counsel was ineffective for

failing to investigate Roland's mental health issues. The State filed a motion to dismiss Roland's postconviction petition, arguing that Roland's claims were barred by waiver, he failed to meet the guidelines for newly discovered evidence, and Roland did not meet the burden of demonstrating that his trial counsel's actions were objectively unreasonable or prejudiced him in any way. In making its ruling, the trial court stated Roland "failed to establish that trial counsel's performance was deficient or that he was prejudiced." On May 25, 2017, the postconviction petition was dismissed, and Roland timely filed this appeal.

¶ 12                                II. ANALYSIS

¶ 13        On appeal, Roland argues that his postconviction petition makes a substantial showing that trial counsel was ineffective for failing to investigate his mental health history in support of his defense. Roland asks that this court remand for a third stage evidentiary hearing.

¶ 14        The Act allows a person serving a criminal sentence to challenge his conviction for violations of the United States or Illinois Constitution. *People v. Tate*, 2012 IL 112214, ¶ 8. If a defendant does not file a direct appeal, the postconviction petition must be filed no later than three years from the date of conviction, unless he alleges facts showing that the delay was not due to his culpable negligence. 725 ILCS 5/122-1(c) (West 2016). In cases not involving the death penalty, the Act provides a three stage process for adjudicating postconviction petitions. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). "A trial court's determination on a post-conviction proceeding will not be reversed unless contrary to the manifest weight of the evidence." *People v. Flores*, 153 Ill. 2d 264, 273 (1992). "Manifest error is error which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 15　　　　At the first stage, the circuit court has 90 days to review the petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a) (West 2016). If the circuit court does not summarily dismiss it within that period, then the petition advances to the second stage. *People v. Domagala*, 2013 IL 113688, ¶ 33.

¶ 16　　　　At the second stage, the trial court may appoint counsel who may amend the petition to ensure the defendant's contentions are adequately presented. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Also, at the second stage, the State is allowed to file an answer or move to dismiss the petition. 725 ILCS 5/122-5 (West 2018). A petition may be dismissed at the second stage "only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

¶ 17　　　　The question before the court is "whether the [postconviction] petition and any accompanying documentation make a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 246. In making this determination, a court must take "all well-pleaded facts that are not positively rebutted by the original trial record" as true and may not engage in any fact-finding or credibility determinations. (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 35. In determining whether a defendant has made a substantial showing of a constitutional violation, "all well-pleaded facts in the petition and affidavits are to be taken as true, but nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient." *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). A claim makes a "substantial showing" of a constitutional violation if its allegations would entitle the petitioner to relief if proven at an evidentiary hearing. *Id.* If a petition makes a substantial

showing of a constitutional violation, the petition advances to a third stage evidentiary hearing where the circuit court, as the fact finder, will "determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Domagala*, 2013 IL 113688, ¶ 34. "Where the State seeks dismissal of a post-conviction petition instead of filing an answer, its motion to dismiss assumes the truth of the allegations to which it is directed and questions only their legal sufficiency." *People v. Miller*, 203 Ill. 2d 433, 437 (2002).

¶ 18     A claim that a defendant was denied effective assistance of counsel is governed by the familiar two-pronged test established in *Strickland*. *People v. Brown*, 2017 IL 121681, ¶ 25. Under *Strickland*, counsel is constitutionally ineffective where representation was objectively unreasonable, and this deficient performance prejudiced the defendant. *Id.* To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Hale*, 2013 IL 113140, ¶ 18 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). A petitioner must satisfy both prongs of the *Strickland* test. *People v. Henry*, 2016 IL App (1st) 150640, ¶ 53. A failure to establish either prong is fatal to petitioner's claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 19     The circuit court dismissed Roland's postconviction petition at the second stage, finding Roland failed to make a substantial showing that his constitutional rights were violated in either the trial or appellate proceedings. We review a second stage dismissal *de novo. Id.* at 316.

¶ 20     Roland argues that by failing to present any evidence corroborating his suicide attempts before and after the incident, his trial counsel provided ineffective assistance. He also argues

that the introduction of his medical history would have strengthened his assertion that he lacked the intent to kill Officer Rewers.

¶ 21    The State contends that Roland's argument rests on a diminished capacity defense, which has not been recognized in Illinois for at least seven years prior to the shooting. *People v. Hulitt*, 361 Ill. App. 3d 634, 641 (2005). The dissent also believes that Roland is effectively arguing diminished capacity. Diminished capacity is considered a partial defense because it is not presented as an excuse or justification for a crime but rather as an attempt to prove that the defendant, because he was incapable of forming the requisite intent of the crime charged, is innocent of that crime but likely guilty of a lesser included offense. *Id*. (citing 21 Am. Jur. 2d *Criminal Law* § 38 (1998)). To show diminished capacity, there must be evidence that at the time of the murder, the defendant did not appreciate the nature of his conduct or was incapable of conforming her conduct as a result of mental disease or defect. *Id.* Here, Roland is not making a diminished capacity defense as he does not assert that he was unable to form the requisite intent for attempted murder. Instead, Roland argues the intent to kill never existed and contends his mental health history bolsters that claim.

¶ 22    The State claims that Roland has failed to make a substantial showing that the medical records at issue ever actually existed. We find that the evidence Roland sought to introduce can be corroborated with the evidence attached to his petition. The form that Tinley provided Roland when he requested his medical records had a list of explanations to check off for why Tinley could not provide the medical records. One of the explanations was: "We have[s] searched our records and are unable to locate a person with a name as it appears above." Instead of selecting this explanation, Tinley indicated they did not provide Roland's records because

a witness signature was required. Tinley provided a form on which they could have indicated the medical records did not exist, but they did not do so. Therefore, we find the State's argument regarding the nonexistence of records unpersuasive.

¶ 23   The State also argues that even if the mental health records exist, Roland fails to demonstrate that it was necessary for trial counsel to obtain them to advance a "legitimate" defense. The State's argument is defeated by the finding of another panel of this court during a prior appeal of this matter. The panel found,

> "because defendant's medical records, documenting his previous suicide attempt and suicidal thoughts, could only have served to corroborate his testimony at trial and support the defense's theory, it is at least arguable that counsel's failure to investigate defendant's mental health history and to present evidence of his hospitalization and previous suicide attempt fell below an objective standard of reasonableness and prejudiced defendant." *Roland*, No. 1-08-1580.

¶ 24   Roland cites *People v. Baldwin*, 185 Ill. App. 3d 1079 (1989) to support the claim that trial counsel's failure to investigate his mental health history and present the available supporting evidence was objectively unreasonable. In *Baldwin*, the defendant appealed his conviction of armed robbery, arguing in part that he did not receive effective assistance of counsel where defense counsel proceeded to trial before investigating defendant's mental condition and where counsel failed to obtain relevant psychiatric records until after trial. On appeal, this court found that failure to investigate defendant's records was sufficient to meet the standard for ineffective assistance of counsel. *Id* at 1090. The court held that the inadequate investigation of the defendant's records and the issue of sanity, which was prejudicial to the fitness question and

the determination of a proper defense at trial, were sufficient to meet the standard for ineffective assistance of counsel. *Id.*

¶ 25    Here, the State contends the evidence at issue was not readily available like in *Baldwin*, and defense counsel in *Baldwin* was able to obtain evidence that contradicted the court's finding of fitness, unlike trial counsel in the present case. We disagree because it is clear from the record here that the evidence Roland sought to introduce was obtainable. In addition to the medical documents attached to the petition that Roland obtained while in custody, the letter from Tinley indicated that medical records were available but could not be released without a witness signature.

¶ 26    We find the supreme court's analysis in *People v. Brown*, 236 Ill. 2d 175 (2010), is instructive. In *Brown*, the defendant, armed with a butcher knife, lunged at a police officer and was shot. Defendant was convicted of attempted first degree murder of a police officer, and more than a month later, at sentencing, he reported a history of mental issues. Defendant claimed he had been depressed, previously tried to kill himself, and lunged at the officers because he wanted them to kill him. He also stated that he had been taking "psych medication" and was told that he should have a psychiatric evaluation, but counsel failed to advise the court. *Id.* at 180. Our supreme court held that the allegations arguably raised a *bona fide* doubt of the defendant's ability to understand the nature and purpose of the proceedings and assist in his defense; thus, counsel's failure to request a fitness hearing arguably fell below an objective standard of reasonableness and arguably prejudiced the defendant. *Id.* at 191.

¶ 27    Here, Roland's arguments, taken as true, satisfy the first prong of *Strickland.* Trial counsel's alleged failure to present evidence of Roland's mental health history that would only

serve to bolster his defense is objectively unreasonable. See *id*. The issue remains whether Roland's allegations demonstrated prejudice. To establish prejudice, a petitioner must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Roland's proposed testimony shows a reasonable probability that the outcome of his proceeding would have been different. The State was required to show a specific intent to kill proven beyond a reasonable doubt. *People v. Homes*, 274 Ill. App. 3d 612, 622 (1995). Roland's medical records would create a credibility contest with Officer Rewers and directly contradict testimony.

¶ 28 Having satisfied both prongs of *Strickland*, Roland has made a substantial showing of a constitutional violation. Therefore, the circuit court erred in dismissing his petition, and we remand for a third stage evidentiary hearing.

¶ 29 III. CONCLUSION

¶ 30 For the foregoing reasons, the judgment of the circuit court dismissing Roland's postconviction petition is reversed, and we remand for a third stage evidentiary hearing on petitioner's claim that he received ineffective assistance of counsel.

¶ 31 Reversed and remanded.

¶ 32 JUSTICE COGHLAN, dissenting:

¶ 33 The majority concludes that "Roland's proposed testimony [regarding his mental health history] shows a reasonable probability that the outcome of his proceeding would have been different." *Supra* ¶ 27. Roland argues that the trial court "received no evidence corroborating [his] testimony that he attempted suicide both before and after this incident, which in turn would have supported his testimony that he did not intend to kill the police officer." The majority

agrees, finding that "[t]he State was required to show a specific intent to kill proven beyond a reasonable doubt" and "Roland's medical records would create a credibility contest with Officer Rewers and directly contradict testimony." *Supra* ¶ 27. I disagree, on grounds that evidence of Roland's mental condition is inadmissible to show that he did not intend to kill the police officer.

¶ 34        Diminished capacity is an affirmative defense that permits " 'a legally sane defendant to present evidence of mental illness to negate the specific intent required to commit a particular crime.' " *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 63 (quoting *Metrish v. Lancaster*, 569 U.S. 351 (2013)). Diminished capacity is not a recognized defense in Illinois. *People v. Hulitt*, 361 Ill. App. 3d 634, 641 (2005). More importantly, a defendant may not raise it under the guise of a reasonable doubt argument. *Id.* As we discussed in *Hulitt*,

> "[t]he doctrine of diminished capacity, also known as the doctrine of diminished or partial responsibility, allows a defendant to offer evidence of her mental condition in relation to her capacity to form the *mens rea* or intent required for commission of the charged offense. [Citation.] Similar to the insanity defense in that it calls into question the mental abnormality of a defendant, it differs in that it may be raised by a defendant who is legally sane." *Id*. at 640-41.

¶ 35        This case is analogous to *Hulitt*, where we found that the defendant's proposed mental health evidence amounted to raising a diminished capacity defense. *Id.* at 641. In *Hulitt*, the defendant was convicted of first degree murder of her daughter. *Id.* at 635. On appeal, she argued that the trial court erred in barring the testimony of a psychologist, who would have opined that while the defendant was not legally insane, she suffered from postpartum depression at the time

of the offense and was " 'unable to appreciate the danger of her actions toward [her daughter].' " *Id.* at 636. This court found that the trial court

> "was entirely correct when it stated that [the psychologist's] opinion appeared to raise the specter of a defense which does not exist under Illinois law. Defendant could not raise it as an affirmative defense and, therefore, should not be permitted to raise it in the guise of a reasonable doubt argument." *Id.* at 641.

¶ 36 Despite Roland's claims to the contrary, allowing evidence regarding his mental history would constitute raising a diminished capacity defense, which is unavailable in Illinois. See *id.* Roland argues that evidence of his mental health history would have supported his defense and "counter[ed] the State's evidence of intent" where "[t]he only significant question of fact before the trial court was [his] mental state at the time he fired the gun." Essentially, Roland attempts to raise a diminished capacity defense "in the guise of a reasonable doubt argument," by arguing that, because he was suicidal, he did not intend to kill Officer Rewers. See *id.* at 641; see also *Johnson*, 2018 IL App (1st) 140725, ¶ 62 (holding that expert testimony that defendant was in a post-seizure state at the time of the offense was "properly excluded because it amounted to a diminished capacity defense").

¶ 37 Because diminished capacity is not a recognized defense in Illinois, evidence of Roland's mental health history is inadmissible to show he did not intend to kill Officer Rewers. It follows that Roland cannot establish prejudice by alleging counsel was ineffective for failing to present this evidence. See, *e.g.*, *People v. Turner*, 2012 IL App (2d) 100819, ¶ 61 (defendant could not establish prejudice for ineffective assistance of counsel where the "purported evidence *** would have been inadmissible hearsay at trial"); *People v. Avilas*, 2021 IL App (2d) 180542-U,

¶¶ 38, 42-43 (counsel not ineffective for failing to introduce inadmissible evidence that could not "clear the hurdle of relevance").

¶ 38       The majority relies on this court's unpublished order reversing the summary dismissal of Roland's petition at the *first stage* of postconviction proceedings, where we found that it was "at least *arguable*" that counsel's performance fell below an objective standard of reasonableness and prejudiced Roland. (Emphasis added.) *People v. Roland*, No. 1-08-1580 (2010) (unpublished order under Illinois Supreme Court Rule 23). At the first stage of postconviction proceedings, "the circuit court must independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit,' " and because most petitions at this stage are drafted by defendants with little legal knowledge, the threshold for survival is low. (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 9 (quoting *People v. Hodges*, 234 Ill. 2d 1, 10 (2009)). At the first stage, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced." (Emphases added.) *Hodges*, 234 Ill. 2d at 17.

¶ 39       Here, at the second stage of postconviction proceedings, "a petitioner must meet a higher standard to survive dismissal." *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 51. At the second stage, Roland bears the burden of showing that his "petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶¶ 33, 35 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). The "substantial showing" that must be made "is a measure of legal sufficiency of the petition's well-

pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *Id.* ¶ 35.

¶ 40　　　The majority relies on this court's finding that Roland made an "arguable" showing of ineffective assistance of counsel at the first stage of postconviction proceedings without explaining how this amounts to a "substantial showing of a constitutional violation." Even if the medical records Roland references in his petition exist, they would not be admissible at trial because they would serve to present a diminished capacity defense. Because Roland's claims rely on a defense that "does not exist under Illinois law," he has not met his burden of making a substantial showing of a constitutional violation. See *Hulitt*, 361 Ill. App. 3d at 641; see also *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 35 ("It is well-established *** that the affirmative defense of diminished capacity is not recognized in Illinois.").

¶ 41　　　Because a legally sane defendant may not present "evidence of mental illness to negate the specific intent required to commit a particular crime" (internal quotation marks omitted) (*Johnson*, 2018 IL App (1st) 140725, ¶ 63), Roland's proposed evidence is inadmissible to show he did not intend to kill Officer Rewers and would not have changed the outcome of this proceeding.

¶ 42　　　Based on Roland's failure to make a "substantial showing of a constitutional violation," I respectfully dissent from the majority opinion, and I would affirm the circuit court's dismissal of his petition.

---

**No. 1-17-3013**

---

| | |
|---|---|
| **Cite as:** | *People v. Roland*, 2022 IL App (1st) 173013 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 02-CR-2663001; the Hon. Maura Slattery-Boyle, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Gilbert C. Lenz, of State Appellate Defender's Office, of Springfield, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and David B. Greenspan, Assistant State's Attorneys, of counsel), for the People. |

---