**2023 IL 128366**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128366)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
FRANK ROLAND, Appellee.

*Opinion filed November 30, 2023.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1    The defendant, Frank Roland, filed a *pro se* postconviction petition alleging he received ineffective assistance of counsel during his bench trial for attempted murder when his attorney failed to present evidence of his mental health history in

support of his defense. After the petition was advanced to the second stage of proceedings, it was dismissed by the circuit court of Cook County.

¶ 2        On appeal, the appellate court reversed the circuit court and remanded the case for a third-stage evidentiary hearing. 2022 IL App (1st) 173013. For the following reasons, we reverse the judgment of the appellate court.

¶ 3                                        BACKGROUND

¶ 4        On September 18, 2002, Roland was arrested in Chicago following a shooting incident involving police officers. Prior to trial, Roland's retained counsel requested that Roland be evaluated for fitness to stand trial and for sanity at the time of the offense. The trial court granted the request and ordered that an evaluation be performed by Dr. Roni Seltzberg, a psychiatrist with Forensic Clinical Services (FCS). Dr. Seltzberg evaluated Roland and found him fit to stand trial with medication. Dr. Seltzberg also reported to the court that she performed a sanity evaluation on Roland and determined he was legally sane at the time of the offense but that he may have been experiencing symptoms of a depressive mood disorder that was likely exacerbated by alcohol and illegal substances. Based on Dr. Seltzberg's evaluation, the trial court found Roland fit to stand trial. Soon thereafter, the trial court allowed Roland's retained counsel to withdraw and appointed new counsel.

¶ 5        On January 27, 2005, a bench trial commenced. Chicago police officer Ronald Rewers testified that on September 18, 2002, he, Officer Catherine Figueroa, and a third officer were on patrol in plain clothes in an unmarked squad car when they received a call stating that a man was threatening a child with a gun. They searched the area until, at approximately 11 p.m., Officer Rewers saw Roland standing on the sidewalk having a conversation with a woman. Roland matched the description of the man who had been reported for threatening the child. Officer Rewers and the other officers exited the car, announced they were police, and ordered Roland to put his hands up. Officer Rewers testified that Roland looked at them and then started running. Officer Rewers began chasing Roland on foot, and "[a]fter about 15 steps," Roland reached into his waist and pulled out a gun. Officer Rewers ordered Roland to drop the gun and show his hands, but Roland did not comply. Instead, as he was "still running," Roland "looked back over his left shoulder" and

"pointed the gun back towards [Officer Rewers] and fired one shot," "all in one motion." Officer Rewers testified that Roland pointed the gun "directly at [him]" and so he "dove to the ground." He saw the muzzle flash and returned fire at Roland. Roland continued running, and Officer Rewers lost sight of him. Approximately half an hour later, Roland was found at a nearby residence and arrested.

¶ 6        On cross-examination, Officer Rewers testified that Roland fired under his left shoulder while looking back at him. Officer Rewers also stated that it was dark out during the shooting incident.

¶ 7        Officer Figueroa testified that she started chasing Roland behind Officer Rewers. She saw Roland turn to look back, and then she saw a muzzle flash. On cross-examination, she agreed that she would have seen the muzzle flash regardless of where Roland pointed the gun.

¶ 8        Roland testified that on September 18, 2002, he was "feeling bad about certain things" including the death of the mother of his child as well as his own mother, and so he was "drinking, smoking weed, [and] getting high." Roland further testified that he was feeling suicidal but that he "didn't have the courage to pull a gun on" himself. He explained that he purchased a gun and "tried to put it to [his] temple" and "in [his] mouth" but he "didn't have the guts to pull the trigger."

¶ 9        Roland stated that, when he saw a police car drive by that evening, he came up with a plan to get the police to shoot and kill him. At approximately 11 p.m., he was standing on the sidewalk talking with his friend, Threasa. Police officers parked in front of him and exited the car.[1] Roland started running. One of the police officers told him to freeze, but he kept running and "fired a shot in the air." Roland testified that he was not trying to kill the police officer and that he shot at a slightly upward angle instead of at the police officer. He explained that he shot into the air because he thought that, once he did so, the police officer would shoot back at him and kill him. He testified that shooting at the police officer "would have defeated [his] whole plan." However, the officer missed Roland when he shot back, and Roland did not have another plan, so he just ran. He fled to Threasa's house nearby, where he was subsequently arrested.

---

[1]Roland did not clarify whether it was the same police car he saw earlier or a different one.

¶ 10     Roland testified that, a couple of days after his arrest, he tried to hang himself in his jail cell using a rope made of bed sheets. Other inmates discovered him unconscious, and he was taken to Cermak Hospital, where he received psychiatric treatment and was placed on medication. He further testified that he had tried to kill himself another time shortly before September 18, 2002, by cutting his throat. He was treated at Tinley Park Hospital, where the doctor said he was crying out for help.

¶ 11     On cross-examination, Roland confirmed that he began running as soon as he saw the police officers and did not shoot his gun until after he had started running. The State did not cross-examine Roland about his suicide attempts.

¶ 12     In closing argument, Roland's trial counsel argued that the ultimate issue in the case was Roland's state of mind. Counsel pointed to Roland's testimony that he was depressed and wanted the police officers to shoot and kill him and that he did not point the gun at Officer Rewers but rather into the air. Counsel asserted this showed that Roland lacked the specific intent to kill.

¶ 13     The State told the court that the issue in this case "boil[ed] down to credibility" and whether Roland pointed his gun at Officer Rewers or into the air. The State asserted that Roland's "excuse" that he was suicidal and was trying to draw police fire was "simply ridiculous based on the evidence." The State argued that Roland's actions were inconsistent with suicide by police, specifically that he ran away, shot directly at Officer Rewers, and then hid in a nearby house.

¶ 14     Following closing arguments, the trial court stated:

"[T]here's absolutely no doubt that [Roland] fired a gun at Officer Rewers. I don't believe [Roland]. It quite frankly doesn't make any sense to me. If he wanted to commit suicide by police, an unmarked car pulls up with three [tactical] officers. He wants to guarantee all three of them shooting at him, he wouldn't be fleeing and running and ducking behind the archway. Just for a whole lot of reasons, [Roland's] story is completely unbelievable to me."

The trial court therefore found Roland guilty of attempted murder.

¶ 15     At the sentencing hearing, the trial court told Roland:

"I understand that you may have some mental health problems.

The doctor has prescribed medication. I do not know how sincere your suicide attempt was at the Cook County Jail, but I do know I will take your lawyer's representation that you are taking psychotropic medication that a doctor has prescribed."

The trial court then sentenced Roland to 30 years' imprisonment. Roland's conviction was affirmed on direct appeal. *People v. Roland*, 373 Ill. App. 3d 1152 (2007) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16        On January 23, 2008, Roland filed a *pro se* postconviction petition alleging he received ineffective assistance of counsel. Specifically, Roland alleged his trial counsel "failed to fully investigate [Roland's] claims of being hospitalized for psychiatric treatment to be able to present a proper defense at trial." Roland attached several documents which he asserted corroborated his testimony that he was suicidal and shot into the air so that the police officers would shoot and kill him. The attached documents included a screening form from Cermak Health Services dated September 20, 2002, which noted that Roland reported he had been hospitalized for psychiatric treatment at Tinley Park in 2002 after he attempted to commit suicide via a "scratched throat" and also noted that Roland had attempted suicide while in the Cook County jail; a form from the Tinley Park Mental Health Center dated May 8, 2007, received in response to Roland's March 27, 2007, release form, noting that the release form had lacked the necessary witness signature; and progress notes from Ingalls Hospital dated July 19, 2002, which noted that Roland was admitted with self-inflicted lacerations to his throat in a possible attempt "to kill himself" with a knife.

¶ 17        The trial court summarily dismissed Roland's petition. Roland appealed, and the appellate court reversed and remanded for second-stage proceedings. *People v. Roland*, 309 Ill. App. 3d 1223 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23). The appellate court found that, because the medical records attached to Roland's petition "could only have served to corroborate his testimony at trial and support the defense theory, it is at least arguable that counsel's failure to investigate [Roland's] mental health history and to present evidence of his hospitalization and previous suicide attempt fell below an objective standard of reasonableness and prejudiced" Roland. *Id.*

¶ 18 On remand, Roland, through appointed postconviction counsel, filed a supplemental petition alleging ineffective assistance of counsel where trial counsel "failed to investigate and present readily available evidence indicating that [Roland] had attempted suicide and had been hospitalized for mental-health issues in the weeks before his arrest." Roland's petition argued that, had his trial counsel sufficiently presented evidence of his mental health records, the trial court would have "heard the full history of [his] suicide attempts" and there was a reasonable probability his trial would have resulted in a different outcome.

¶ 19 The State moved to dismiss. On May 25, 2017, the trial court granted the State's motion and dismissed Roland's petition at the second stage of proceedings. In its written order, the trial court explained:

"[Roland] acknowledges that the trial court was aware that his mental health was an issue in this case. [Citation.] Jail records showed that [Roland] attempted suicide while in jail soon after his arrest. His mental health was investigated by counsel and evidence as to his mental state was presented to the court, both through [Roland's] testimony and these records. That trial counsel did not pursue every piece of documentation does not establish an ineffectiveness claim."

The trial court also noted that the documents attached to Roland's petition did not show "that he was actually seen at Tinley Park." Moreover, the trial court found that such documentation would not have changed the outcome at trial, as it "would not have established that [Roland] was suicidal on the day of the shooting" and would not have outweighed the State's "consistent, credible testimony from officers on the pertinent details," specifically that Roland fired a gun "at or near officers."

¶ 20 Roland appealed, and the appellate court reversed and remanded for a third-stage evidentiary hearing. In so ruling, the appellate court found that Roland's petition made a substantial showing that he received ineffective assistance of counsel because he satisfied both prongs of the *Strickland* test pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). 2022 IL App (1st) 173013, ¶ 28. Specifically, the appellate court held that "[t]rial counsel's alleged failure to present evidence of Roland's mental health history that would only serve to bolster his defense is objectively unreasonable." *Id.* ¶ 27. The appellate court further held that

Roland showed prejudice because his allegations created a reasonable probability that the outcome of the proceedings would have been different, in particular that his medical records "would create a credibility contest with Officer Rewers and directly contradict testimony." *Id.*

¶ 21 Justice Coghlan dissented on the ground that allowing evidence of Roland's mental health history would constitute raising a diminished capacity defense, which is unavailable as a defense in Illinois. *Id.* ¶ 37 (Coghlan, J., dissenting).

¶ 22 This court granted the State's petition to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 23                                  ANALYSIS

¶ 24 At issue is whether Roland's petition made a substantial showing that he received ineffective assistance of counsel when his trial counsel did not present the documents appended to his petition, such that a third-stage evidentiary hearing is warranted. The State does not take up the dissent's point about Roland making a diminished capacity argument. Rather, the State argues that the trial court took into consideration Roland's testimony that he was suicidal but did not believe it since he ran away from the police officers. Therefore, additional evidence of his suicide attempts that occurred at some other time would not have made a difference in Roland's trial.

¶ 25 The Post-Conviction Hearing Act (Act) provides an avenue for individuals convicted of criminal offenses to challenge their convictions on grounds of constitutional violations. 725 ILCS 5/122-1 *et seq.* (West 2008). The Act sets forth three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. If the circuit court does not dismiss the petition at the first stage, it advances to the second stage, where the State may file a motion to dismiss the petition. *Id.* ¶ 33; 725 ILCS 5/122-4, 122-5 (West 2008). At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Domagala*, 2013 IL 113688, ¶ 33. The petitioner bears the burden of making such a showing. *Id.* ¶ 35. "If the petitioner makes the requisite substantial showing that his constitutional rights were violated, he is entitled to a third stage evidentiary hearing." *Id.* ¶ 34.

¶ 26 Roland's petition alleged that he received ineffective assistance of counsel when his trial counsel failed to present corroborating evidence of his mental health history, specifically the documents regarding his suicide attempts. Every defendant has a constitutional right to the effective assistance of counsel under both the United States Constitution and the Constitution of Illinois. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland*, 466 U.S. 668. *People v. Moore*, 2020 IL 124538, ¶ 28. Pursuant to that standard, in order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate *both* that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* ¶ 29. More precisely, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* (citing *Domagala*, 2013 IL 113688, ¶ 36). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *People v. Pingelton*, 2022 IL 127680, ¶ 53.

¶ 27 We need not address Roland's contention that his trial counsel's failure to present the documents appended to his postconviction petition was objectively unreasonable because we conclude that Roland has failed to establish prejudice. See *People v. Johnson*, 2021 IL 126291, ¶ 53 (if it is easier to dispose of an ineffective-assistance claim on the ground that it lacks a showing of sufficient prejudice, a court may proceed directly to *Strickland*'s prejudice prong). Roland urges that his trial came down to a credibility contest between his testimony that he pointed the gun into the air and Officer Rewers's testimony that Roland pointed the gun directly at him. He argues, as the appellate court found, evidence of his mental health would have corroborated his testimony and explained why he shot the gun into the air. Had this evidence been presented, therefore, there is a reasonable probability that his trial would have resulted in a different outcome.

¶ 28 We agree with Roland that the documents appended to his petition would have corroborated his uncontested testimony at trial regarding his mental health issues. Nonetheless, it does not necessarily follow that these documents, if admitted into evidence, would have changed the outcome of his trial. See *id.* ¶ 54 (an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment).

Indeed, in assessing prejudice under *Strickland*, the question is not whether counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently but, instead, whether it is *reasonably likely* that the result of the proceedings *would have been different*. *People v. Lewis*, 2022 IL 126705, ¶ 46. We cannot say that in this case there would have been a different outcome.

¶ 29    In asking whether Roland's trial likely would have had a different outcome if trial counsel had presented the documents appended to his postconviction petition, we take note of the trial court's specific comments about Roland running away from the police officers. The court said: "If he wanted to commit suicide by police *** [if he] wants to guarantee all three of them shooting at him, he wouldn't be fleeing and running and ducking behind the archway." As Roland acknowledges, the trial court was fully aware of his mental health issues and suicide attempts, but it nevertheless found that his conduct *on that day* did not support the defense that he wanted to commit "suicide by police." In finding Roland guilty, the trial court focused on his fleeing from the police and not the credibility regarding his suicide attempts. Accordingly, it is unlikely that corroborating evidence that Roland had struggled with suicide on other occasions would have changed the trial court's focus from his conduct on that particular day, such that the court would have found him not guilty.

¶ 30    In other words, it is not reasonably likely that further evidence of Roland's mental health history would have changed the trial court's determination that Roland's conduct during the shooting did not demonstrate that he wanted to commit "suicide by police." Specifically, the court noted that he fled from the police and their gunfire, taking evasive measures to avoid being shot. Accordingly, we find that Roland's postconviction petition failed to satisfy the prejudice prong of *Strickland*. See *People v. Harris*, 206 Ill. 2d 1, 16 (2002) (in order to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). Because Roland has failed to establish the prejudice prong required by *Strickland*, we need not address whether Roland's petition satisfied the performance prong of *Strickland*. See *People v. Gayden*, 2020 IL 123505, ¶ 27 (the failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel).

¶ 31    We therefore hold that Roland's postconviction petition failed to make a substantial showing that he received ineffective assistance of counsel. The trial court accordingly did not err in dismissing his petition at the second stage. Thus, we reverse the appellate court's judgment, which reversed the trial court's ruling.

¶ 32                                    CONCLUSION

¶ 33    For the foregoing reasons, we reverse the appellate court's judgment holding that Roland's postconviction petition made a substantial showing that he received ineffective assistance of trial counsel and remanding the matter for a third-stage evidentiary hearing in the trial court. Accordingly, we affirm the circuit court of Cook County's dismissal of Roland's petition.

¶ 34    Appellate court judgment reversed.

¶ 35    Circuit court judgment affirmed.

¶ 36    JUSTICE NEVILLE took no part in the consideration or decision of this case.