2025 IL App (1st) 230967-U

No. 1-23-0967

Order filed March 11, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 22CR9506 |
| | ) | |
| KEVIN DENNY, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirming defendant's conviction over his ineffective assistance of counsel claim where he has not shown he was prejudiced by counsel calling a witness whose testimony he alleges undermined his defense and strengthened the State's case.

¶ 2    Following a bench trial, defendant Kevin Denny was convicted of domestic battery and sentenced to two years in prison. On appeal, he argues that his trial counsel provided ineffective assistance for calling a witness whose testimony contradicted defendant's version of events, undermined counsel's defense, and bolstered the State's case. For the following reasons, we affirm.

¶ 3    Relevant here, defendant was charged by indictment with domestic battery for causing bodily harm to Shalandra Withers, a family or household member with whom defendant had a current or former dating relationship, by striking, kicking, and biting her. The indictment stated that defendant had a prior domestic battery conviction.

¶ 4    Defendant's pretrial answer to discovery did not name any witness that the defense intended to call. However, on the day of trial, defense counsel stated that a defense witness whom counsel had been unaware of had arrived with defendant. Counsel confirmed with the court that he had interviewed the witness and would share with the State what the witness would say. The court then proceeded with trial.

¶ 5    Withers testified that she and defendant had a "past dating relationship." They dated from 2016 to 2022, and lived together "[o]ff and on" while they dated. On June 10 and 11, 2022, Withers was "trying to end the relationship."

¶ 6    Between 10:30 p.m. and 10:45 p.m. on June 10, 2022, Withers was at a friend's house and received a phone call from her 17-year-old daughter, Kyla Henderson. Withers immediately drove home. She remained in her vehicle, and defendant exited her home. Defendant approached her vehicle, and she asked him to drive himself home in her vehicle. Withers moved to the passenger seat while he entered the driver's seat. It was around 11 p.m. or 11:15 p.m. Defendant drove Withers's vehicle to a liquor store, then a gas station, after which they began arguing about him not driving to his home.

¶ 7    Defendant curbed the vehicle near 13th Street and Central Park Avenue, in Chicago, with the passenger's side towards an open field. He exited the driver's door. Withers began to open the passenger door but, as defendant approached, she immediately tried to close the door and roll up

the window. Withers and defendant "tussled" over the door. Defendant pulled it open and punched Withers in the mouth. With her left hand, she pulled the keys from the vehicle's ignition. Defendant, leaning into the passenger compartment, bit her upper left arm, took the keys, and threw them into the field. Withers and defendant "tussle[d] and wrestle[d]," and he pulled her out of the vehicle and onto the ground. Defendant "proceeded to fight [her] and drag [her]." He retrieved her cell phone from the floor of the vehicle, and Withers thought he threw it. She did not have her glasses on. Withers was on the ground screaming when two men arrived in a black vehicle and called defendant's name. Defendant spoke with them, entered their vehicle, and they left.

¶ 8      Withers crawled through the field looking for her keys, cell phone, and glasses. She found the keys and slowly drove home, arriving around 2 a.m. She "screamed" for her mother and Henderson, and for a phone with which to call 911. Henderson photographed her injuries.

¶ 9      Police arrived, and Withers and Henderson went with officers to the field to look for Withers's glasses and cell phone. They found her glasses. They left, and Withers began tracking her cell phone. Withers and Henderson went to a friend's house until about 8 a.m. Then, Withers tracked her phone as approaching her home. She and Henderson went there and parked in the back. Defendant approached on foot, threw her phone through the passenger window of her vehicle, and walked away.

¶ 10     Withers identified the photographs that Henderson took of her injuries, which she described as depicting scrapes on her left leg and arm, a bruise on her lip from defendant's punch, and a bite mark on her left arm. The photographs are included in the record on appeal and are consistent with her testimony.

¶ 11   On cross-examination, Withers testified that, before she received Henderson's phone call, she drank a cup of vodka and pink lemonade but was not intoxicated. There was no one else near 13th and Central Park during the incident. Withers did not have defendant's phone. Henderson did not speak with defendant on the phone the next morning before defendant returned Withers's phone.

¶ 12   Henderson testified she was 17 years old, and that she knew defendant as he and Withers were "in a relationship on and off" for a few years. As to the events of June 10 and 11, 2022, Henderson's direct testimony was consistent with Withers's testimony regarding defendant arriving at the house, Henderson calling Withers, Withers arriving home, and defendant driving away from the house in Withers's vehicle with Withers in the passenger seat. Henderson's testimony was also consistent with Withers's regarding Henderson photographing Withers's injuries, searching for Withers's phone and glasses with the officers, tracking the phone, going to a friend's house, and defendant's return of the phone in the morning. Henderson additionally testified that when Withers returned home around 2 a.m., she was "distressed" and bruised.

¶ 13   On cross-examination, Henderson denied that Withers's breath smelled of alcohol when she returned home around 2 a.m. after she had left with defendant. Around 8 a.m., Henderson called Withers's phone and spoke with defendant, asking him to bring Withers's phone to their house.

¶ 14   Chicago police detective Jeffry Phillips testified that he interviewed defendant after defendant was arrested on June 29, 2022.[1] Defendant stated that Withers had called him and asked

---

[1] The detective's first name appears in the record as both Jeffry and Jeffrey. We adopt the spelling he provided at trial.

to meet at 13th and Central Park. He went to that location and argued with Withers "about another woman." Defendant entered the driver's seat of her vehicle while they were "arguing and fighting." He took Withers's phone but returned it during the argument. He admitted possessing Withers's key fob.

¶ 15    The parties stipulated that defendant was previously convicted of domestic battery.

¶ 16    Defense counsel called Ronald Tapes Jr. Tapes testified he had known defendant for 11 or 12 years and defendant was "like [his] father." Tapes was near 13th and Central Park after midnight on June 11, 2022, along with 10 or 12 other people. Defendant arrived, driven by someone other than Withers. Tapes knew Withers from the neighborhood.

¶ 17    Withers then arrived alone in a vehicle. Counsel asked Tapes to describe the vehicle, and Tapes answered, "It was late at night. I wasn't paying attention. I just know that was the girl that he's talking to." Tapes testified Withers was "already out the car screaming, cursing [defendant] out," but then stated that she never exited her vehicle. Defendant approached Withers's vehicle after she said that she had his phone. Withers was "drunk or high," and slurring. She "got to swinging off him." Defendant "got tired of her hitting him," "reached and got his phone," then "made the mistake of pulling her out" of the driver's seat before he walked away. Tapes denied that defendant took Withers's keys. Withers reentered her vehicle and followed defendant. Tapes remained there for about an hour and did not see her return or the police arrive.

¶ 18    On cross-examination, the following colloquy occurred:

"Q. And you said that this was his girl who was there?

A. Girl that pulled up, Shalandra lady, yeah, this is someone he talks to.

Q. Okay. So they were dating?

A. Yeah, at the time probably."

¶ 19    Tapes further testified that when defendant pulled Withers out of the vehicle, she landed on her "butt."

¶ 20    Defense counsel called defendant. The court asked if defendant understood that he did not need to testify, and defendant stated he would rather not testify. Following a colloquy with the court, defendant confirmed he did not want to testify. The defense rested.

¶ 21    Following argument, the court found defendant guilty. As to whether Withers and defendant had a dating relationship, the court stated that Withers's testimony that she and defendant dated was insufficient to establish a dating relationship. However, it noted that Withers also testified that the relationship had a start and an end, they had lived together, and she was trying to break up with defendant. The court also referenced defendant's statement to police that their argument was over another woman. Further, Henderson testified Withers and defendant "had a dating relationship," and "[defendant's] own witness testified that they were dating or that he was talking to her." The court found that the "evidence as a whole," established that they had a dating relationship.

¶ 22    The court further determined that defendant committed a battery against Withers as Withers's testimony was supported by photographs of her injuries and "her reaction." Further, Tapes corroborated that defendant pulled Withers out of her vehicle. The court concluded that defendant "did, in fact, strike" Withers and, based on "the testimony of all the witnesses," that he committed a battery.

¶ 23    The court denied defendant's posttrial motion. Following a hearing, the court sentenced defendant to two years in prison.

¶ 24    On appeal, defendant argues that his trial counsel provided ineffective assistance by calling Tapes as a witness as his testimony undermined the core defense that the State failed to prove defendant and Withers had a dating relationship, contradicted defendant's version of events as told to Detective Phillips where he never admitted to or described making physical contact with Withers or dating her, and bolstered the State's case that defendant committed a battery against Withers.

¶ 25    A criminal defendant has a constitutional right to the effective assistance of counsel. *People v. Webb*, 2023 IL 128957, ¶ 21. A claim that a defendant received ineffective assistance of counsel is measured against the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Webb*, 2023 IL 128957, ¶ 21. To prevail on such a claim, a defendant must show that (1) counsel's representation "fell below an objective standard of reasonableness," and (2) there is a reasonable probability that, "but for counsel's errors, the result of the proceeding would have been different." *Id.*

¶ 26    We review *de novo* whether a defendant received ineffective assistance of counsel. *Id.* ¶ 23. If a case may be resolved due to lack of prejudice, the court need not consider whether counsel performed deficiently. *People v. Roland*, 2023 IL 128366, ¶ 27. We find that defendant has failed to establish prejudice.

¶ 27    Under the prejudice prong, a reasonable probability that the result of the proceedings would have been different means "a probability sufficient to undermine confidence in the outcome." *Id.* ¶ 26. When, as here, a defendant challenges a conviction, he must affirmatively prove that "there is a reasonable probability that, absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt." *People v. Johnson*, 2021 IL 126291, ¶¶ 54-55.

¶ 28    The question is not simply whether other evidence, unrelated to counsel's error, sufficed to support the conviction. *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 49; see also *People v. Morris*, 2013 IL App (1st) 111251, ¶ 116 (question is whether, considering counsel's deficiency, the defendant "received a fair trial resulting in a verdict worthy of confidence"). We have found that "where the trial court expressly relied on" evidence admitted due to an error by counsel, there was a reasonable probability that the outcome of the trial would have been different. *Lucious*, 2016 IL App (1st) 141127, ¶ 49. On the other hand, the question is also more than whether it is possible that the factfinder would have found a reasonable doubt had counsel acted differently. *Roland*, 2023 IL 128366, ¶ 28. Rather, it must be "*reasonably likely*" that the result would have been different. (Emphasis in original.) *Id.*

¶ 29    Defendant argues that he was prejudiced by counsel's decision to call Tapes to testify, noting that the court referenced Tapes's testimony both in finding that Withers and defendant had a dating relationship and there was a battery. However, defendant has not established that it is reasonably likely the result of the proceedings would have been different had his counsel not called Tapes as a witness.

¶ 30    Defendant was convicted of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2022)). The domestic battery statute prohibits knowingly, without legal justification, causing bodily harm to a family or household member. *Id.* Family or household members include those "who have or have had a dating *** relationship," but "neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts" constitutes a dating relationship. 720 ILCS 5/12-0.1 (West 2022). We have described a dating relationship as "a serious courtship that at least

needs to be an established relationship with a significant romantic focus." (Internal quotation marks omitted.) *People v. Wallace*, 2020 IL App (1st) 172388, ¶ 27.

¶ 31    Defendant contends that the court would not have found that Withers and defendant had a dating relationship absent Tapes's testimony that Withers was defendant's "girl" he "talk[ed] to," and that defendant and Withers were "probably" dating. He notes that the court remarked that Withers's statement that the two had a past dating relationship was insufficient but that "[defendant's] own witness testified that they were dating or that he was talking to her," and "the evidence as a whole" proved they had a dating relationship.

¶ 32    Nevertheless, as the court also noted, Withers testified to more than just making a statement that she and defendant had a "past dating relationship." Specifically, Withers testified that she and defendant had a "past dating relationship" from 2016 to 2022, and they had lived together off and on while dating. The long duration of the relationship and the fact that they lived together distinguishes it from a "casual, nascent, or potential" relationship. See *McClellan v. Hull*, 2023 IL App (1st) 220465, ¶ 65 (serious courtships should be distinguished from casual, nascent, or potential relationships). Further, although the 17-year-old Henderson did not testify that Withers and defendant had a "dating relationship," she did testify that they were in a "relationship," and this court has stated that, to young people, the term relationship "suggests a much deeper level of intimacy and commitment" than the term "dating." *Id.* ¶ 67. We fail to see why the court would not have inferred a dating relationship from Henderson's testimony that they were in a "relationship" absent Tapes's testimony.

¶ 33    Henderson also testified that Withers and defendant's relationship was on and off, implying that Withers and defendant would break up and reunite. Withers testified that the relationship

began in 2016 and ended in 2022, and she was trying to end the relationship when the incident occurred. Such definite distinctions in a relationship's status and duration would not likely be drawn in a more casual, platonic, or one-sided relationship. Those pieces of testimony further suggest that Withers and defendant had, at least at some point, a dating relationship. Also, although defendant's statement that their argument was about another woman would not, standing alone, establish that they had a dating relationship, it adds credence to that interpretation.

¶ 34    Defendant additionally argues that Withers and Henderson's testimony did not establish a romantic focus to Withers and defendant's relationship as they did not testify to details of romantic conduct, such as whether defendant gifted Withers flowers or they went on dates. See *Wallace*, 2020 IL App (1st) 172388, ¶ 27 (describing a dating relationship as having "a significant romantic focus" (internal quotation marks omitted)). But Tapes's testimony could not have affected the court's determination about the romantic focus of the relationship where his testimony also lacked any details of that sort.

¶ 35    Tapes testified simply that Withers was defendant's "girl" he "talk[ed] to," and that they were probably dating. His testimony was just as proclamatory as Withers and Henderson's. We cannot say that Tapes's testimony "was far stronger than the inference" that could be drawn from Withers and Henderson's testimony such that, without Tapes's testimony, the court would have determined the relationship lacked adequate romantic focus. See *Lucious*, 2016 IL App (1st) 141127, ¶¶ 48-49 (counsel's error resulted in the admission of "direct evidence" of an element of the offense that the court relied on and "was far stronger than the inference" that could be drawn from the remaining evidence on that element).

¶ 36    Despite its similarities to Withers and Henderson's testimony, defendant contends that Tapes's testimony was not cumulative but "powerful corroboration." See *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 81 (distinguishing between corroborative and cumulative evidence). However, even before Tapes testified, the court heard "powerful corroboration" of Withers's testimony that defendant and Withers dated through Henderson's testimony.

¶ 37    Again, we acknowledge that the question of prejudice is not merely whether there was other evidence, unrelated to any error by counsel, that would have sufficed to support the defendant's conviction. *Lucious*, 2016 IL App (1st) 141127, ¶ 49. However, in finding that defendant and Withers had a dating relationship, the court referenced not only Tapes's testimony but also much of the other evidence, namely that Withers and defendant's relationship had a start and end date, they had lived together, Withers was trying to break up with defendant, defendant stated their argument was over another woman, and Henderson testified they were in a relationship.

¶ 38    As a result, we are confident that the court's finding regarding Withers and defendant's dating relationship would have been the same even if counsel had not called Tapes as a witness. We therefore find he has not established prejudice on this issue. See *Roland*, 2023 IL 128366, ¶ 26 (a reasonable probability that an outcome would have differed is a probability sufficient to undermine confidence in the outcome); *Morris*, 2013 IL App (1st) 111251, ¶ 116 (prejudice question is whether defendant "received a fair trial resulting in a verdict worthy of confidence").

¶ 39    We are similarly confident that the court's finding that defendant caused Withers bodily harm would have been the same even if counsel had not called Tapes as a witness. As defendant notes, while Withers returned home with injuries she contended defendant inflicted, defendant's statement to Detective Phillips did not indicate that he made physical contact with Withers. Then,

Tapes, the only eyewitness to the events near 13th and Central Park, corroborated Withers that defendant made physical contact with her, even characterizing the contact as a "mistake." Defendant points out that the court found that Tapes corroborated Withers that defendant pulled her out of the vehicle and determined that defendant committed a battery based on the testimony of all the witnesses.

¶ 40    However, the court also stated that Withers's testimony was supported by the photographs of her injuries and "her reaction." The photographs show a bite mark on Withers's arm and a bruise to her lip, injuries that would not be sustained by defendant pulling her out of the vehicle and her landing on her "butt" as Tapes testified. The court found that defendant "did, in fact, strike" Withers. The court's statements reflect belief in Withers's testimony that defendant punched her and bit her arm, facts to which Tapes did not testify. Withers's testimony and the photographs were therefore the only direct evidence that defendant punched her and bit her arm and, ultimately, injured her.

¶ 41    Henderson also testified that Withers returned home "distressed" and with bruises. The testimony elicited regarding Withers's injuries and behavior when she returned home, along with the photographs of her injuries, were already in evidence before Tapes testified. And, while defendant did not admit in his statement to Detective Phillips that he battered Withers, he also did not deny making physical contact with her. Rather, he acknowledged they were "arguing and fighting" and was silent on whether the confrontation became physical. We are therefore not convinced that, through Detective Phillips's testimony regarding defendant's statement, defendant provided an account that conflicted with Withers's regarding whether defendant caused Withers bodily harm, let alone one that made it reasonably likely that, had counsel not called Tapes, the

court would have found a reasonable doubt that defendant inflicted bodily harm on Withers. Thus, despite the court's references to Tapes's testimony, its statements as a whole provide confidence that it would have found bodily harm absent Tapes's testimony, and defendant has also failed to establish prejudice on this issue. See *Roland*, 2023 IL 128366, ¶ 26; *Morris*, 2013 IL App (1st) 111251, ¶ 116.

¶ 42    In sum, defendant has not shown he suffered prejudice under *Strickland* from counsel's decision to call Tapes as a witness. His ineffective assistance of counsel claim therefore must fail. *Webb*, 2023 IL 128957, ¶ 21; *Johnson*, 2021 IL 126291, ¶¶ 54-55. Accordingly, we affirm his conviction of domestic battery.

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 44    Affirmed.